Erik F. Stidham (Idaho State Bar #5483) (Admitted pro hac vice)
Robert A. Faucher (Idaho State Bar #4745) (Admitted pro hac vice)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID  83702-5974
Telephone: (208) 342-5000
efstidham@hollandhart.com
rfaucher@hollandhart.com

Engels Tejeda (11427)
Ben Passey (19324)
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
ejtejeda@hollandhart.com
bdpassey@hollandhart.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| In re:<br><br>AMMON EDWARD BUNDY,<br><br>    Debtor. | Bankruptcy Case No.:  24-23530 WTT<br>Chapter 7<br><br>Honorable William T. Thurman |
|---|---|
| ST. LUKE'S HEALTH SYSTEM, LTD.,<br>ST. LUKE'S REGIONAL MEDICAL CENTER, LTD., CHRIS ROTH, NATASHA D. ERICKSON, M.D., and TRACY W. JUNGMAN, NP,<br><br>    Plaintiffs,<br><br>v.<br><br>AMMON EDWARD BUNDY,<br><br>    Defendant. | Adversary Proceeding<br>No.:  24-02130 |

**PLAINTIFFS' APPLICATION FOR ENTRY OF DEFAULT JUDGMENT ADJUDICATING THEIR CLAIMS AGAINST DEBTOR NON-DISCHARGEABLE UNDER 11 U.S.C. § 523(a)(6)**

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, made applicable in this adversary proceeding by Rule 7055 of the Federal Rules of Bankruptcy Procedure, and Local Rule 7055-1, Plaintiffs St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, Ltd., Chris Roth, Natasha D. Erickson, M.D., and Tracy W. Jungman, NP (collectively "Plaintiffs" or "St. Luke's Creditors"), by and through their counsel, respectfully move this Court for the entry of a default judgment against Defendant Ammon Edward Bundy ("Defendant" or "Debtor") in the form attached hereto as **Exhibit A**. In support hereof, Plaintiffs respectfully states as follows:

## STATEMENT OF THE FACTS

1. Each of the St. Luke's Creditors obtained a prepetition judgment against debtor Ammon Bundy ("Debtor") in Idaho state court. A true and complete copy of the judgment is attached hereto as **Exhibit B**. Pursuant to an order of the Court, a true and complete copy of which is attached hereto as **Exhibit C**, Debtor was liable under the judgment for not only the damages he caused the St. Luke's Creditors, but also for the damages that his co-defendants caused the St. Luke's Creditors. Ex. C at 2. The basis of the Court's order was that the defendants conspired to cause the harm the St. Luke's Creditors suffered. The basis of the judgment was, among other things, that Debtor committed the intentional torts of defamation, invasion of privacy by portraying the St. Luke's Creditors in a false light, intentional infliction of emotional distress, and trespass. *Id*.

2

2. The St. Luke's Creditors sued Debtor in this adversary proceeding to have their claims adjudicated to be non-dischargeable under Section 523(a)(6) of the Bankruptcy Code. Docket No. 1.[1]

3. The Court gave Debtor notice that a complaint had been filed against him challenging his discharge (the "Complaint"). Docket Nos. 2, 3.

4. The St. Luke's Creditors caused their Complaint and the summons to be served on Debtor in accordance with the applicable bankruptcy rules. Docket Nos. 4, 6, 8.

5. Debtor has not answered or otherwise responded to the Complaint. Accordingly, the Clerk of the Court has entered his Certificate of Default against Debtor in accordance with: (1) Federal Rule of Civil Procedure 55(a), made applicable hereto by Federal Rule of Bankruptcy Procedure; and (2) Local Rule 7055-1(a). *See* Docket No. 9.

## ARGUMENT

**A. Default Judgment Should Be Entered Because the Well-Pleaded Allegations of the Complaint Establish the Judgment Is Not Dischargeable.**

6. Like default, "[d]efault judgments in adversary proceedings are governed by Federal Rule of Civil Procedure 55, ('Rule 55'), made applicable by Federal Rule of Bankruptcy Procedure 7055." *Rajala v. Taylor (In re Taylor)*, 495 B.R. 28, 33 (10th Cir. BAP 2013).

7. "Failure to file a timely answer is grounds for entry of a default judgment under Rule 55(c)." *Id.* (internal quotation marks and brackets omitted). When default judgment is sought, "a court is required to review the file to determine if the summons and complaint have been properly served, whether an answer or other responsive pleading has been timely filed, and,

---

[1] Citations to the Docket are to Adversary Proceeding No. 24-02130, whereas citations to the "Main Docket," which refer to Chapter 7 Case No. 24-23530.

3

if not, whether additional proof is necessary in order to determine the type of relief to be granted[.]" *Id.*

8. Failure to answer or otherwise respond to a complaint results in its well-pleaded allegations being deemed admitted. *See Tripodi v. Welch*, 810 F.3d 761, 765 (10th Cir. 2016) (holding that well-pleaded allegations of securities violations claims were deemed true upon defendant's default).

9. Section 523(a)(6) creates an exception to a debtor's discharge "from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). The term "entity" includes individuals and corporations. *See* 11 U.S.C. § 101(15) ("The term 'entity' includes person, estate, trust, governmental unit, and United States trustee."); 11 U.S.C. § 101(41) ("The term 'person' includes individual, partnership, and corporation[.]").

10. For the debtor's conduct to be considered willful and malicious, it must have been "a deliberate or intentional injury, not merely a deliberate act that leads to injury." *Mitsubishi Motors Credit of Am., Inc. v. Longley (In re Longley)*, 235 B.R. 651, 656 (10th Cir. BAP 1999); "'[W]illful' is akin to the standard of deliberate injury necessary for an intentional tort." *Id.*; *see also Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998) (holding that reckless or negligent conduct does not satisfy Section 523(a)(6)); *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 919 (10th Cir. BAP 2020) (reasoning that maliciousness considers the debtor's motives).

11. In addition to direct proof of a deliberate or intentional injury, the Court may look to circumstances to infer intent as well as participation in the intentional conduct of others. *See, e.g., Glencove Holdings, LLC v. Bloom (In re Bloom)*, 634 B.R. 559, 598 (10th Cir. BAP 2021)

(holding intent to defraud shown where debtor's conduct benefited himself by "lining the pockets of his wholly owned limited liability company and his associates"); *Trans-West, Inc. v. Mullins (In re Mullins)*, 2021 Bankr. LEXIS 1761, at *19 (10th Cir. BAP 2021) (affirming non-dischargeability holding as to debtor's wife who was a knowing participant in the conversion of funds from debtor's fraudulent scheme, as evidenced by the length of time of the conspiracy, her use of the funds, and the amount of the funds).

12. The Complaint demonstrates that Debtor intended the injuries he caused the St. Luke's Creditors: Debtor, "working with his co-conspirators PRN, the Campaign, his acolyte Diego Rodriguez, and Rodriguez's entities Freedom Man Press, LLC ("FM Press") and Freedom Man PAC ("FM PAC"), repeatedly spread the intentionally false narrative that the St. Luke's Parties' care of the Infant was part of a conspiracy with state agencies to commit child trafficking, kidnapping, and other heinous crimes." Docket No. 1, ¶ 15; *see also* Docket No. 1, ¶¶ 13-14, 19, 21 (describing Debtor's initiation and promotion of the false conspiracy theory). Debtor "and his co-conspirators published the names and personal information of (now judgment creditors) Roth, Erickson, and Jungman to threaten and intimidate them." Docket No. 1, ¶ 15. Debtor also "incited an armed mob of hundreds" so that "a lockdown was necessary for the safety of patients, patients' families, and hospital employees, notwithstanding the assistance from the Boise Police Department and Idaho State Police." Docket No. 1, ¶ 16. He "and his co-conspirators also directed callers to flood St. Luke's with calls for the purpose of shutting down the hospital's operations." Docket No. 1, ¶ 17. And Debtors' "followers obeyed, overwhelming critical phone lines with menacing calls including death threats and threats of sexual violence." *Id.* Debtor took these actions during his campaign for Governor of Idaho "for his own benefit,

appearing on dozens of extremist alternative media broadcasts to promote his personal brand, raise money, and gain more members in PRN by republishing the conspiracy theory." Docket No. 1, ¶¶ 14, 19. Debtor's "intentional actions caused significant harm to the St. Luke's Parties, in the form of canceled appointments, increased security, reputational harm, emotional distress, and other losses." Docket No. 1, ¶ 20. He "intended the St. Luke's Parties to suffer these harms, as demonstrated by his own admissions and other evidence." Docket No. 1, ¶ 20; *see also* Docket No. 1, ¶ 26 (identifying admissions and evidence in the underlying case).

13.     Debtor had ample opportunity to respond to the Complaint but chose not to do so. The allegations, deemed admitted through default, establish that Debtor's conduct was willful and malicious. The Judgment is not dischargeable.

**B.      Additionally, Re-Litigation of the Section 523(a)(6) "Willful and Malicious" Standard Is Barred by Issue Preclusion.**

14.     In addition to the allegations of the Complaint, deemed admitted through default, nondischargeability under Section 523(a)(6) is established through the doctrine of issue preclusion.

15.     This Court applies Idaho preclusion law to determine whether the Idaho court's rulings bar re-litigation of the issues underlying the Section 523 action. *See Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 883 (10th Cir. BAP 2002) (applying the preclusion law of the state where the judgment was rendered); *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (The full-faith-and-credit statute, 28 U.S.C. § 1738, directs federal courts "to refer to the preclusion law of the State in which judgment was rendered").

16.     Idaho law gives preclusive effect to default judgments. "[A]bsent fraud or collusion, the principle of res judicata applies equally in cases of default judgment." *Waller v.*

6

*State, Dep't of Health & Welfare*, 146 Idaho 234, 237, 192 P.3d 1058, 1061 (2008); *see also Ticor Title Co. v. Stanion*, 144 Idaho 119, 122, 157 P.3d 613, 616 (2007) (explaining that the term "res judicata covers both claim preclusion (true res judicata) and issue preclusion (collateral estoppel)"). By failing to file an answer or make an appearance in prior litigation, a party waives the opportunity to re-litigate issues properly raised in the prior case in subsequent litigation. *Or. Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 148 Idaho 47, 52, 218 P.3d 391, 396 (2009).

17. More specifically, for issue preclusion to apply, "(1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation." *Ticor Title Co.*, 144 Idaho at 124, 157 P.3d at 618 (citing *Rodriguez v. Dep't of Corr.*, 136 Idaho 90, 93, 29 P.3d 401, 404 (2001)).

18. Here, each element is established. First, Debtor had a full and fair opportunity to litigate with respect to the injury he and his co-conspirators intentionally caused the St. Luke's Creditors. *See Berkshire Invs., Ltd. Liab. Co. v. Taylor*, 153 Idaho 73, 82, 278 P.3d 943, 952 (2012) (holding party had full and fair opportunity to litigate in the absence of allegations of hiding the issue, and when evidence at trial pertained to the issue). Second and third, the issues decided in the prior litigation were identical to those presented in this adversarial action and actually decided. This is demonstrated by the Idaho court's findings of fact and conclusions of law, appended to the Complaint. *See* Docket No. 1. The Complaint identifies the specific

findings for which the St. Luke's Creditors urge issue preclusion, where the Idaho court found Debtor intentionally caused the St. Luke's Creditors harm in order to benefit himself and his co-conspirators. Docket No. 1, ¶ 31. Fourth, default judgments are final judgments on the merits for purposes of issue preclusion. *Waller*, 146 at 237, 192 P.3d at 1061. And fifth, Debtor was a party to the litigation that led to the Judgment. *See* Exhibits B, C.

## CONCLUSION

19. The St. Luke's Creditors request that this Court enter default judgment holding the Judgment debt nondischargeable under Section 523(a)(6) of the Bankruptcy Code.

DATED this 13th day of December, 2024.

        HOLLAND & HART LLP

        */s/Erik F. Stidham*
        Erik F. Stidham (Admitted pro hac vice)
        Robert A. Faucher (Admitted pro hac vice)

        */s/Engels Tejeda*
        Engels Tejeda
        Benjamin D. Passey

        *Attorneys for St. Luke's Health System, Ltd.,*
        *St. Luke's Regional Medical Center, Ltd.,*
        *Chris Roth, Natasha Erickson, M.D., and*
        *Tracy Jungman, NP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2024, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

U.S. Trustee – trusttee@mbt-law.com

I further certify that on December 13, 2024, a copy of the foregoing was served by electronic mail to Ammon E. Bundy at aebundy@bundyfarms.com and was also mailed First Class Mail, U.S. postage prepaid to the following addresses:

Ammon E. Bundy
896 E 400 S
New Harmony, UT 84757

Ammon E. Bundy
P.O. Box 1062
Cedar City, UT 84721

/Engels Tejeda
Engels Tejeda
of Holland & Hart LLP