Erik F. Stidham (ISB #5483) (Admitted pro hac vice)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID  83702-5974
Telephone: (208) 342-5000
Facsimile: (208) 343-8869
Email:  efstidham@hollandhart.com

Engels Tejeda (11427)
Ben Passey (19324)
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700
Email:  ejtejeda@hollandhart.com
          bdpassey@hollandhart.com

*Attorneys for Plaintiffs* St. Luke's Health System, Ltd.,
St. Luke's Regional Medical Center, Ltd.,
Chris Roth, Natasha Erickson, M.D., and Tracy Jungman, NP

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>AMMON EDWARD BUNDY,<br><br>Debtor. | Bankruptcy Case No.: 24-23530 WTT<br>Chapter 7<br><br>Honorable William T. Thurman |
| ST. LUKE'S HEALTH SYSTEM, LTD.,<br>ST. LUKE'S REGIONAL MEDICAL CENTER,<br>LTD., CHRIS ROTH, NATASHA D. ERICKSON,<br>M.D., and TRACY W. JUNGMAN, NP,<br><br>       Plaintiffs,<br><br>v.<br><br>AMMON EDWARD BUNDY,<br><br>       Defendant. | Adversary Proceeding<br>No.: 24-02130 |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM IN SUPPORT

Pursuant to Fed. R. Civ. P. 56, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 7056, and Local Rule 56-1, St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, Ltd., Chris Roth, Natasha Erickson, M.D., and Tracy Jungman, NP (together the "St. Luke's Creditors"), respectfully move for summary judgment against Defendant Ammon Edward Bundy ("Debtor Bundy").

## LR 7056-1(a) INTRODUCTION

1.      The undisputed facts show that the St. Luke's Creditors' $52 million claim (the "Claim") is a debt for Debtor Bundy's willful and malicious injury to the St. Luke's Creditors and their property. *See* Proofs of Claim Nos. 1-5. Specifically, the Idaho Court (defined below) found that Debtor Bundy engaged in a grift, exploiting the dire medical condition of an infant (the "Infant") to gain money and publicity for himself at the expense of the St. Luke's Creditors. *See* Dkt. 1.[1] Seeking to benefit financially, enhance his standing among his followers, grow the membership of and revenues from his People's Rights Network, and gain political support for his campaign for Governor of Idaho, Debtor Bundy launched a knowingly dishonest smear campaign against the St. Luke's Creditors. He alleged that the St. Luke's Creditors, employees of the State of Idaho State, the Idaho judiciary, the Idaho police, and primary care providers, engaged in widespread kidnapping, trafficking, sexual abuse, and killing of Idaho children. *See id.* Debtor Bundy published these false accusations to successfully incite an armed mob of his followers to surround St. Luke's hospital and cause it to lock down. *See id.* A jury found that Debtor Bundy and his co-conspirators caused the St. Luke's Creditors to incur $52 million in damages, inclusive of punitive damages. The Idaho Court also entered a permanent injunction requiring Debtor Bundy to stop making defamatory statements against the St. Luke's Creditors

---

[1] Citations to the "Dkt." are to the docket of this adversary proceeding, while citations to the "Main Dkt." are to the docket on the main Chapter 7 Case No. 24-23530 WTT.

and to remove defamatory posts from online. Demonstrating his maliciousness, to this day Debtor Bundy continues to disobey the Idaho Court's injunction despite this Court granting relief from the stay to enforce it.

      2.      Summary judgment excepting the Claim from the discharge under 11 U.S.C. § 523(a)(6) is appropriate for two independent reasons. First, issue preclusion prevents re-litigation of issues that the Idaho Court resolved that are identical to those under §523(a)(6). Specifically, the Idaho Court and jury found that Debtor Bundy intentionally lied and inflicted harm on the St. Luke's Creditors, with wrongful motives and without justification or excuse. Debtor Bundy cannot use this adversary proceeding to relitigate these issues.

      3.      Second, and alternatively, Debtor Bundy has admitted the material allegations of the Complaint. *See* Fed. Bankr. P. 8 (adopting Fed. R. Civ. P. 8(b)(6)). Debtor Bundy purports that he responded to the Complaint by filing in the main case a "Discloser and Response to the Many St. Lukes Motions Seeking to Destitute Ammon Bundy and His Family" (the "Discloser"). *See* Main Dkt. 253 at 32.[2] But in the Discloser, Debtor Bundy does not deny that the Idaho Court found his statements were defamatory, willful and malicious. *See id.* Instead, Debtor Bundy doubles down on his defamatory allegations, essentially collaterally attacking the Idaho Court's and jury's findings by republishing the defamatory statements and further harming the St. Luke's Creditors. *See id.* Because these arguments do not deny the key allegations of the Complaint, the allegations are deemed admitted under Rule 8(b)(6).

---

[2] The Court is treating the Discloser as Debtor Bundy's *de facto* "answer" in this proceeding. *See* Dkt. 26. On October 15, 2024, the St. Luke's Creditors filed their Complaint initiating this Adversary Proceeding, and on October 18, 2024, they served the same upon Debtor Bundy. *See* Dkts. 4-6. Debtor Bundy failed to answer or respond, leading the Court to enter a Default Certificate on November 22, 2024, and a Default Judgement after notice and hearing on January 31, 2025. *See* Dkts. 9, 15. On February 17, 2023, Debtor Bundy asked the Court to reconsider the default judgement, arguing that he responded to the Complaint through the Discloser even though he signed and mailed the Discloser to this Court, the Chapter 7 Trustee, and the St. Luke's Creditors' counsel at least five days *before* the St. Luke's Creditors even filed the Complaint. *See* Dkts. 17, 26. Ultimately, the Court granted Debtor Bundy's Motion to Reconsider over the St. Luke's Creditors' objection, thereby leaving the Discloser as Debtor Bundy's operative "answer" to the Complaint. *See* Dkts. 26-27.

## <u>LR 7056-1(b) STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS</u>

4.      Pursuant to Local Rule 7056-1(b)(2), the St. Luke's Creditors submit the following statement of elements and material undisputed facts as to each element, which will be admitted unless Debtor Bundy specifically responds with "a concise response to each legal element" and a concise description and citation with particularity to evidence on which Debtor Bundy relies to dispute the statement of fact. *See* Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. 7056; Local Rule 7056-1(c)(2)(A)-(B).

5.      **<u>Section 523(a)(6)</u>**: "A discharge under section 727 . . . of [the Bankruptcy Code] does not discharge an individual debtor from any debt . . . for [a] willful and [b] malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6). "In the Tenth Circuit, the phrase 'willful and malicious injury' has been interpreted as requiring proof of two distinct elements - that the injury was both 'willful' and 'malicious.'" *Mitsubishi Motors Credit of Am., Inc. v. Longley* (*In re Longley*), 235 B.R. 651, 655 (B.A.P. 10th Cir. 1999) (citing *In re Compos*, 768 F.2d 1155 (10th Cir. 1985)).

6.      **<u>Issue Preclusion</u>**: Where, as here, a creditor relies on the preclusive effect of a state court judgment to establish an element of its claim under § 523(a), federal courts must "refer to the preclusion law of the State in which judgment was rendered[.]" *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *see also* 28 U.S.C. § 1738 (requiring federal courts to give "full faith and credit" to state court judgments and orders); *Cobb v. Lewis* (*In re Lewis*), 271 B.R. 877, 883 (B.A.P. 10th Cir. 2002) (applying the preclusion law of the state where the judgment was rendered).

7.      Here, the Idaho Court entered the Judgment giving rise to the Claim. Under Idaho law, issue preclusion applies when: (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the

4

issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation. *Ticor Title Co. v. Stanion*, 144 Idaho 119, 124, 157 P.3d 613, 618 (2007) (citing *Rodriguez v. Dep't of Corr.*, 136 Idaho 90, 93, 29 P.3d 401, 404 (2001)).

8.       Pursuant to Local Rule 7056-1(b)(2), the St. Luke's Creditors address the undisputed material facts related to each of the elements of issue preclusion under Idaho law. For simplicity, they also address the undisputed facts material to § 523(a)(6)'s "willful" and "malicious" elements under the second element of issue preclusion.

9.       **Issue Preclusion Element No. 1:** issue preclusion requires a showing that "the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case." *Ticor Title*, 157 P.3d at 618.

10.      **Undisputed Material Facts Showing Debtor Bundy had a Full and Fair Opportunity to Litigate in the Issues Decided in the 2022 Lawsuit**:

11.      On May 11, 2022, the St. Luke's Creditors filed a civil action against Debtor Bundy and other defendants captioned *St. Luke's Health System, Ltd., et al. v. Ammon Bundy et al.*, case no. CV01-22-06789 (the "2022 Lawsuit") in the Fourth Judicial District Court of Idaho, County of Ada (the "Idaho Court"). *See* 2022 Lawsuit Docket, attached as Ex. G to the Declaration of Erik Stidham in Support of this Motion (the "Stidham Dec."), filed concurrently.

12.      In the 2022 Lawsuit, the St. Luke's Creditors pursued claims against Debtor Bundy for defamation, invasion of privacy, intentional infliction of emotional distress, civil trespass, and violation of the Idaho Charitable Solicitation Act. *Id.*, Ex. B (Idaho Complaint).

13.      In the 2022 Lawsuit, the St. Luke's Creditors sought compensatory and punitive damages alleging that Debtor Bundy exploited a dangerously malnourished child brought to St. Luke's by law enforcement under child protection laws. *Id.*

14.     In the 2022 Lawsuit, the St. Luke's Creditors alleged that Debtor Bundy spread far and wide false accusations against the St. Luke's Creditors of committing heinous crimes against children and caused a lockdown by inciting an armed mob of hundreds to surround the hospital, then used the incident and the false conspiracy theory to build his online brand, obtain funds from his followers, and gain support for his campaign for Governor of Idaho. *Id.*

15.     Debtor Bundy did not answer or otherwise respond to the complaint that the St. Luke's Creditors filed in the 2022 Lawsuit. *See* Stidham Dec., Ex. G (2022 Lawsuit Docket).

16.     Throughout the 2022 Lawsuit, Debtor Bundy properly served with filings. Stidham Dec., ¶ 14, Ex. J. He also publicly acknowledged the case against him and announced he would not participate. *See e.g.*, Stidham Dec., Exs. C, K at 40:43 to 42:00.

17.     In a Facebook video post that he made during the 2022 Lawsuit, Debtor Bundy stated:

> "I decided that the best way-the best course, because of the circumstance, is to just allow the court to go do their thing, allow these guys to do their thing. And ultimately, the judge, because it's a civil case, will order a default judgment against me, and then St. Luke's will try to collect . . .
>
> . . . I decided that the best thing to do is just not allow them to distract me, not go into the courts, not spend all that money, just allow them to do what they're doing-not really allow, because it's my way of really defending myself. Just let them give a default judgment against me and then I'll deal with it after that."

Stidham Dec., Ex. C at 3:9-12, 3:18-21.

18.     Instead of participating in the 2022 Lawsuit, and while and after that lawsuit was pending, Debtor Bundy posted over 65 videos spreading the knowingly false conspiracy, both during the 2022 Lawsuit and afterward. Stidham Dec., ¶ 13; *see also id.*, Ex. G at pp. 79, 84 (2022 Lawsuit Docket showing post-Judgment Motion for Contempt and November 13, 2023 warrant of attachment against Debtor Bundy); I.R.C.P. 75(e) (authorizing warrant of attachment when the evidence shows probable cause defendant violated injunction).

19.    Debtor Bundy has testified under oath in this chapter 7 case that he had a net worth of $5 to $7 million during the 2022 Lawsuit. *See* Stidham Dec., Ex. D (Tr. of Debtor Bundy's 2004 Exam at 187:11-188:10).

20.    The Idaho Court entered Default against Debtor Bundy for his failure to respond or participate in the 2022 Lawsuit. *See* Stidham Dec., Ex. A.

21.    Debtor Bundy did not seek to set aside the Idaho Court's Default. *See* Stidham Dec., Ex. G (2022 Lawsuit Docket).

22.    The Idaho Court referred the question of causation and damages to a jury under Idaho Rule of Civil Procedure 55. *See* Stidham Dec., Exs. E and F.

23.    On July 24, 2023, at the end of a two-week trial, the jury returned a verdict in favor of the St. Luke's Creditors for $52,000,000, ultimately resulting in a judgment of $51,928,306.20 against Debtor Bundy (the "Judgment"). *See id.*, Ex. A. The Judgment included both compensatory and punitive damages for the St. Luke's Creditors' claims for defamation, invasion of privacy, intentional infliction of emotional distress, and violation of the Idaho Charitable Solicitation Act*. See id.*

24.    On August 25, 2023, the Idaho Court granted the St. Luke's Creditors' motion for permanent injunction, entering findings of fact and conclusions of law regarding the same ("Findings and Conclusions"). *See* Stidham Dec., Ex. H.

25.    The Idaho Court expressly found that Debtor Bundy and his codefendants in the 2022 Lawsuit "were allowed to participate in the jury trial on damages including jury selection, opening statements, cross-examination and closing arguments, but all Defendants failed to appear." *See* Stidham Dec., Ex. H at p. 1 (emphasis added).

26.    Debtor Bundy did not seek to set aside, appeal, or otherwise challenge in the Idaho Court or any court of competent jurisdiction the Default, the Findings and Conclusions, or Judgment. *See* Stidham Dec., Ex. G (2022 Lawsuit Docket).

27.     **Issue Preclusion Issue No. 2**: issue preclusion requires a showing that "the issue decided in the prior litigation was identical to the issue presented in the present action." *Ticor Title*, 157 P.3d at 618. The Idaho Court decided at least two issues qualifying under this standard: (a) Debtor Bundy's injury to the St. Luke's Creditors or their property was "willful" and (b) Debtor Bundy's injury to the St. Luke's Creditors or their property was "malicious."

28.     **Issue 2(a) - "Willfulness"**:  a debtor's conduct is "willful" within the meaning of §523(a)(6) if it is "a deliberate or intentional injury, not merely a deliberate act that leads to injury." *Mitsubishi Motors*, 235 B.R. at 656.

29.     **Undisputed Material Facts Establishing Willfulness**:

30.     In its Findings and Conclusions, the Idaho Court found among other things:

    a.   Debtor Bundy and his codefendants made statements that "were intended to damage the reputations of the [St. Luke's Creditors]; invade the privacy of Mr. Roth, Dr. Erickson, and NP Jungman; to shut down St. Luke's Hospital; and to threaten harm to those involved in the CPS case involving the Infant." *See* Stidham Dec., Ex. H at pp. 18-20, ¶ 73, p. 14, ¶ 57.

    b.   "The intentional, materially false and malicious defamatory statements by the Defendants include, but are not limited to, the following:

        [i]      The Infant was perfectly healthy when taken by CPS.

        [ii]     St. Luke's made the Infant sick and infected the Infant with disease.

        [iii]    The Infant was kidnapped or unlawfully taken by law enforcement or St. Luke's.

        [iv]     St. Luke's, St. Luke's management, law enforcement, DHW, the courts, and the medical practitioners are all involved in

a conspiracy to engage in criminal child trafficking, kidnapping, and stealing children to make money.

[v]     The medical providers are pedophiles who want to abuse children and engage in child trafficking.

[vi]     DHW makes more money for every child it takes into CPS custody and that is why DHW kidnaps and traffics children and only allows certain people with a specific sexual orientation to adopt children.

[vii]     St. Luke's and the medical practitioners intentionally or negligently harmed or injured the Infant, committed medical malpractice and/or misdiagnosed the Infant.

[viii]   St. Luke's reported the parents to CPS.

[ix]     Dr. Erickson threatened to file a report with CPS if the parents did not agree to the treatment plan between March 1-4, 2022.

[x]      St. Luke's intentionally kept the Infant longer than necessary in the hospital because the parents did not want the Infant vaccinated.

[xi]     The family was discriminated against because the Infant was unvaccinated.

[xii]    The parents have thousands of dollars in medical bills they have to pay based on the care provided by St. Luke's or any medical provider.

[xiii]   The parents did not consent to the medical treatment provided to the Infant.

[xiv]    The Infant was released from the Children's Hospital and

returned directly to the family due to the protesters' or

Defendants', actions."

*See* Stidham Dec., Ex. H at pp. 18-20, ¶ 73.

31. The Idaho Court found in its Findings and Conclusions that:

a.   Debtor "Bundy . . . used the tactic of 'public shaming' through false and

defamatory narratives to intimidate and defame the [St. Luke's Creditors].

This included but was not limited to accusing the [St. Luke's Creditors] of

kidnapping, child trafficking, child abduction, abusing children, and

stealing children for money and pedophilia. This intimidating also

included releasing private information about Mr. Roth, Dr. Erickson and

NP Jungman which put these Plaintiffs and their families at risk of harm

as testified to at trial." *Id.* at p. 15, ¶ 59.

b.   Debtor Bundy's and his codefendants' "marketing techniques and use of

social media have the effect of disseminating knowingly defamatory

information and disinformation to radicalize their followers and at the

same time get media coverage of their actions and raise monies for their

organizations based on their defamatory statements. [Debtor Bundy and

his codefendant] wanted their messages to go viral as well as deep and

wide, and to have lasting effects. [They] wanted their social media attack

and protests to prevent St. Luke's from providing services to others.

[They] also created a clear connection in their social media for

contributions to support their conduct. The media recognition gained by

the Defendants through their disinformation and defamatory statements is

intended to raise their individual profiles as well as their organizations' profiles." *Id.* at p. 17, ¶ 64.

    c.  Debor Bundy's and his codefendant's "tactics [were] deliberate and intentional" based on testimony from an expert on reputational harm. *Id.* at p. 16, ¶ 64.

32.    **Issue 2(b) - "Malicious"**:  a debtor's conduct is "malicious" if the debtor's actions are "intentional, wrongful, and done without justification or excuse." *Utah Behavior Servs. v. Bringhurst (In re Bringhurst)*, 569 B.R. 814, 823 (Bankr. D. Utah 2017).

33.    **Undisputed Material Facts Establishing Malice:**

34.    The Idaho Court also found in its Findings and Conclusions that:

    a.  The defamatory statements that Debtor Bundy and his codefendants made "were completely unfounded, false, made intentionally, and ***maliciously*** harmed the reputations of the [St. Luke's Creditors] and others who were doxxed." Stidham Dec., Ex. H at pp. 20-21, ¶ 76 (emphasis added);

    b.  "These false statements invaded the privacy of Plaintiffs Mr. Roth, Dr. Erickson and NP Jungman by portraying them in a false light as persons who harm children. The defamatory statements and conduct of the Defendants intentionally inflicted emotional distress on Plaintiffs Mr. Roth, Dr. Erickson and NP Jungman as well as other parties who were doxxed and threatened." *Id.*

    c.  "[D]efamatory statements about [the St. Luke's Creditors] were made by [Debtor Bundy] at his political events and made for the indirect purpose of raising campaign contributions." *Id.* at p. 15, ¶ 60.

    d.  Debtor "Bundy directed his followers to be ready to 'fight it out on the street.' [Debtor Bundy] . . . created a false and defamatory conspiracy

theory against the [the St. Luke's Creditors] and repeated it over and over again in an effort to have St. Luke's put out of business and the medical providers to lose their jobs." *Id.* at p. 16, ¶ 63.

e. Debtor Bundy and his codefendant also used the Infant being taken into CPS custody to increase their own visibility on the internet and in the community as well as to raise money for themselves through the organizations they controlled. "<u>This conduct continued to the present and it is not expected to stop as it is a source of fundraising for [Debtor] Bundy's and [his codefendant's] organizations</u>." *Id.* at p. 17, ¶ 65 (emphasis added).

f. Debtor Bundy's and his codefendant's "business model is to raise money for themselves or the organizations they control from followers based on false, fraudulent and defamatory statements. The Defendants have used disinformation (misinformation that is intentionally spread) to harm Plaintiffs." *Id.* at p. 22, ¶ 81.

g. "The false and defamatory statements were made as a part of a tactical and sustained marketing campaign to defame and smear the reputations of [the St. Luke's Creditors], incite unlawful conduct by [Debtor Bundy's and his codefendant's] followers, create a fear of future physical harm to [the St. Luke's Creditors], and create an incentive for followers to make donations to [Debtor Bundy and his codefendant] or organizations they controlled." *Id.* at p. 24, ¶ 89.

35.     The Idaho Court in the 2022 Lawsuit specifically found:

> [Debtor Bundy's and his codefendant's] actions in this case, as well as the fact that they refuse to stop making defamatory statements, repeat past defamatory statements, presents a continuing threat of actual irreparable harm to [the St. Luke's

Creditors]. The continuing threat has led to St. Luke's increasing
its security at each of its hospitals. The [St. Luke's Creditors]
continue to be the subject of threats by [Debtor Bundy and his
codefendants] or their followers. The threats include but are not
limited to personal, professional or family member harm through
[Debtor Bundy's and his codefendants'] internet presence and re-
posting of prior defamatory statements. <u>A prior Protection Order
by the Court has failed to deter [Debtor Bundy and his
codefendants] from making knowingly false and defamatory
statements and repeating such statements</u>."

Ex. H at p. 24-25, ¶ 90 (emphasis added).

36.     The Idaho Court also concluded that Debtor Bundy's and his codefendants'

"defamatory statements [were] not protected speech under the First Amendment" of the United

States Constitution. Stidham Dec., Ex. H at pp. 27-33.

37.     **Issue Preclusion Element No. 3**: issue preclusion under Idaho law requires a

showing that "the issue sought to be precluded was actually decided in the prior litigation." *Ticor*

*Title*, 157 P.3d at 618.

38.     **Undisputed Material Facts Regarding Element No. 3:**

39.     The Idaho Court found that Debtor Bundy's statements were "intended to damage

the reputations of the [the St. Luke's Creditors]." Stidham Dec., Ex. H at p. 14, ¶ 57.

40.     The Idaho Court found that Debtor Bundy's statements "were completely

unfounded, false, <u>made intentionally</u>, and <u>maliciously</u> harmed the reputations of the [St. Luke's

Creditors]." Stidham Dec., Ex. H at pp. 20-21, ¶ 76 (emphasis added).

41.     The Idaho Court found that Debtor Bundy's and his codefendants' "statements in

every possible form were intentional and with reckless disregard for the truth, fraudulent,

malicious, and defamatory." Stidham Dec., Ex. H at p. 29.

42.     The Idaho Court ruled that all damages were assessed jointly and severally.

Stidham Dec., Exs. A, E.

43.     **Issue Preclusion Element No. 4**: issue preclusion under Idaho law requires a showing that "there was a final judgment on the merits in the prior litigation." *Ticor Title*, 157 P.3d at 618.

44.     **Undisputed Material Facts Regarding Finality**:

45.     On August 29, 2023, the court entered Judgment in favor of the St. Luke's Creditors and against Debtor Bundy. *See* Stidham Dec., Ex. A.

46.     Debtor Bundy did not appeal the Judgment, and the time to file an appeal has expired. *See* Stidham Dec., Ex. G (2022 Lawsuit Docket).

47.     Debtor Bundy's codefendant (Diego Rodriguez) appealed his own liability under the Judgment, but Debtor Bundy never appealed. *See* Stidham Dec., Ex. G (2022 Lawsuit Docket).

48.     Neither Debtor Bundy nor any of his codefendants has posted a bond pending appeal, or has sought and obtained a stay pending appeal of the Judgment. *See* Stidham Dec., Ex. G (2022 Lawsuit Docket).

49.     **Issue Preclusion Element No. 5**: for issue preclusion to apply under Idaho law, "the party against whom the issue is asserted [must have been] a party or in privity with a party to the litigation." *Ticor Title*, 157 P.3d at 618.

50.     **Undisputed Material Facts Regarding Mutuality**:

51.     Debtor Bundy was a party to the 2022 Lawsuit. *See e.g.*, Stidham Dec., Exs. A-B.

## JURISDICTIONAL STATEMENT

52.     The St. Luke's Creditors commence this adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 4007 and 7001(f). This Court has jurisdiction to determine nondischargeability under 11 U.S.C. § 523(a)(6) and 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and relates to Debtor Bundy's Case No. 24-

23530-WTT under Chapter 7 of the Bankruptcy Code. To the extent necessary, the St. Luke's

Creditors consent to entry of final order(s) or judgment by this Court with respect to this Motion.

## GOVERNING STANDARD

53.     Pursuant to Federal Rule of Civil Procedure 56(c), made applicable by Federal

Rule of Bankruptcy Procedure 7056, summary judgment is appropriate when there is no genuine

issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(c). "A fact is 'material' if, under the governing law, it could have an effect on the

outcome of the lawsuit." *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015) (internal citation

omitted). "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the

nonmoving party on the evidence presented." *Id.* But "the moving party is entitled to judgment

as a matter of law" where, as here, "the nonmoving party [fails] to make a sufficient showing on

an essential element of [his] cause with respect to which [he] has the burden of proof." C*elotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## ARGUMENT

### A.  THE CLAIM IS A NON-DISCHARGEABLE DEBT FOR DEBTOR BUNDY'S WILLFUL AND MALICIOUS INJURY TO THE ST. LUKE'S CREDITORS OR THEIR PROPERTY WITHIN THE MEANING OF SECTION 523(a)(6).

54.     Section 523(a)(6) excepts from an individual debtor's discharge debts "for willful

and malicious injury by the debtor to another entity or to the property of another entity[.]" 11

U.S.C. § 523(a)(6). The St. Luke's Creditors must show that the debtor's conduct was both

"willful" and "malicious" by a preponderance of the evidence to succeed on a claim under §

523(a)(6). *McCain Foods USA Inc. v. Shore (In re Shore)*, 317 B.R. 536, 542, 544 (B.A.P. 10th

Cir. 2004) (affirming summary judgment against debtor under Section 523(a)(6) on the basis of

issue preclusion).[3]

---

[3] *See also*, 11 U.S.C. § 101(15) ("The term 'entity' includes person, estate, trust, governmental unit, and
United States trustee."); 11 U.S.C. § 101(41) ("The term 'person' includes individual, partnership, and
corporation[.]").

55.    Here, the undisputed material facts show that the St. Luke's Creditors are entitled to judgment as a matter of law because the doctrine of issue preclusion prevents re-litigation of the Idaho Court's findings and conclusion that Debtor Bundy willfully and maliciously caused the St. Luke's Creditors to incur the Claim. "The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (quoting 28 U.S.C. §1738); *see also Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 883 (B.A.P. 10th Cir. 2002) (applying the preclusion law of the state where the judgment was rendered).

56.    Applying *Marrese*, Idaho law governs the scope of issue preclusion here because the Idaho Court entered the Judgment, Permanent Injunction, and Findings and Conclusions. Under Idaho law, issue preclusion applies when:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case;
>
> (2) the issue decided in the prior litigation was identical to the issue presented in the present action;
>
> (3) the issue sought to be precluded was actually decided in the prior litigation;
>
> (4) there was a final judgment on the merits in the prior litigation; and
>
> (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Ticor Title*, 57 P.3d at 618.

57.    The undisputed facts show that the St. Luke's Creditors are entitled to judgment as a matter of law on each of these elements.

## 1.    <u>Debtor Bundy had a Full and Fair Opportunity to Litigate in the 2022 Lawsuit, but Intentionally Refused to Participate</u>.

16

58.     A party has a full and fair opportunity to litigate when he declines to answer, and default judgment is entered against him. *See Or. Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 148 Idaho 47, 52, 218 P.3d 391, 396 (2009) (by failing to file an answer or make an appearance in prior litigation, a party waives the opportunity to re-litigate issues properly raised in the prior case in subsequent litigation). Debtor Bundy's failure to answer in the 2022 Lawsuit and the default subsequently entered satisfies this issue preclusion element.

59.     While other jurisdictions' law does not apply, even other courts find that a party who intentionally defaults cannot complain that he did not have an opportunity to litigate in the first action. *See e.g.*, *McCart v. Jordana (In re Jordana)*, 232 B.R. 469, 476-78 (B.A.P. 10th Cir. 1999) (affirming application of issue preclusion in nondischargeability action relating to default judgment on fraud claims where judgment debtor chose not to participate in the prior case); *accord Imsirovic v. Fitch (In re Fitch)*, 666 B.R. 563, 577 (Bankr. S.D. Ohio 2025) (holding default judgment had preclusive effect). As the court reasoned in *Fitch*, "[a]lthough Defendant never presented evidence in his defense in the State Case, he did have a full and fair opportunity to do so," and "this Court can only conclude that Defendant's noncompliance was deliberate." 666 B.R. at 581-82. To deny preclusive effect in such situations would "reward" a debtor for avoiding trial and permit him to "delay substantially and perhaps ultimately avoid payment of the debt by deliberate abuse of the judicial process." *Bush v. Balfour Beatty Bahamas (In re Bush)*, 62 F.3d 1319, 1324 (11th Cir. 1995) (cited approvingly in *In re Jordana*, 232 B.R. 469). Here, the undisputed facts show that Debtor Bundy had a full and fair opportunity to litigate at each stage of the 2022 Lawsuit but chose to default instead.

60.     For example, throughout the 2022 Lawsuit, Debtor Bundy publicly acknowledged the case against him and announced he would not participate in it. He posted on Facebook that he decided the "best thing to do" was to "not go into the courts" and let the Idaho Court "give a default judgment against me I'll deal with it after that." Ex. C. at p. 3:18-21. And as the Idaho

Court expressly found, Debtor Bundy and his codefendants in the 2022 Lawsuit "were allowed to participate in the jury trial on damages including jury selection, opening statements, cross-examination and closing arguments, but all Defendants failed to appear." Ex. H at p. 1 (emphasis added). Debtor Bundy did not fail to participate because he lacked resources to mount a defense, as he has recently admitted under oath that he had a net worth of $5 to $7 million during the 2022 Lawsuit. *See* Ex. D at 187:11-188:10. Instead, Debtor Bundy did not participate in the 2022 Lawsuit, posting over 65 videos defaming the St. Luke's Creditors and benefiting himself while the 2022 Lawsuit was ongoing. *See also* Stidham Dec., ¶¶ 14-15, Exs. C, J, and K at 40:43 to 42:00.  Thus, the undisputed facts show no genuine dispute of material fact that Debtor Bundy had a full and fair opportunity to participate in the 2022 Lawsuit.

2. <u>The Relevant Issues Decided in the 2022 Lawsuit are Identical to the Issues Presented in this Proceeding</u>.

61.    The second element of issue preclusion – the identity of issues in the two cases – does not require an identity of claims. *See Ticor Title*, 57 P.3d at 618. For instance, in *Berkshire Investments, LLC. v. Taylor*, the issue decided in the prior litigation was interpretation of a disclaimer, specifically whether the litigants had divested themselves of the right to pursue claims as trust beneficiaries. 153 Idaho 73, 82, 278 P.3d 943, 952 (2012). Subsequent litigation raised the issue of the right to pursue claims in light of the disclaimer, although "repackage[d]" in terms of fraud, perjury, negligence, and racketeering. *Id.* The Idaho Supreme Court held the issues were identical, and issue preclusion applied. *Id.* Here, like *Berkshire Investments*, the 2022 Lawsuit and this adversary proceeding involved two identical and dispositive issues although in slightly different claims: i.e., whether Debtor Bundy caused an (a) "willful" and (b) "malicious" injury to the St. Luke's Creditors.

a.    ***The Idaho Court Determined Debtor Bundy Caused a Willful Injury to the St. Luke's Creditors***.

Case 24-02130   Doc 36   Filed 05/23/25   Entered 05/23/25 15:33:48   Desc Main
Document     Page 19 of 28

62.     Under § 523(a)(6), a debt is for a willful injury if the debtor causes "a deliberate or intentional injury, not merely a deliberate act that leads to injury." *Mitsubishi Motors*, 235 B.R. at 656. "'[W]illful' is akin to the standard of deliberate injury necessary for an intentional tort." *Id.*; *see also Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998) (holding that reckless or negligent conduct does not satisfy Section 523(a)(6)).

63.     "[T]o constitute a willful act under § 523(a)(6), the debtor must desire to cause the consequences of his act or believe that the consequences are substantially certain to result from it." *Wood v. Hortman (In re Hortman)*, Nos. 19-29252, 20-02021, 2022 Bankr. LEXIS 204, at *1 (Bankr. D. Utah Jan. 27, 2022) (quoting *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004)). This is a subjective standard. *Utah Behavior Servs. v. Bringhurst (In re Bringhurst)*, 569 B.R. 814, 823 (Bankr. D. Utah 2017) (citing *Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, No. 99-3339, 2000 U.S. App. LEXIS 22754, at *9 (10th Cir. Sept. 8, 2000)).

64.     Here, the Idaho Court found in the 2022 Lawsuit that Debtor Bundy acted with the intent to harm the St. Luke's Creditors – he did not merely take an action that resulted in injury to them. *See In re Longley*, 235 B.R. at 656 (willfulness established through showing of debtor's intent to harm). In the Idaho Court's words, Debtor Bundy and his codefendants "intended to damage the reputations of the [St. Luke's Creditors]; invade the privacy of Mr. Roth, Dr. Erickson, and NP Jungman; to shut down St. Luke's Hospital; and to threaten harm to those involved in the CPS case involving the Infant." Ex. H at p. 14, ¶ 57. Debtor Bundy succeeded in his resolve, causing significant harm to the St. Luke's Creditors' reputation, threatening their safety and their family's safety, and causing a mob of about 400 armed followers to storm St. Luke's Hospital, causing a lockdown, without regard to the impact on its patients or caregivers.  The Idaho Court concluded that Debtor Bundy's defamatory statements "were completely unfounded, false, made intentionally, and maliciously harmed the reputations

of the Plaintiffs and others who were doxxed." *Id.* at p. 20, ¶ 76. In fact, "[n]o reasonable person would think these statements were meant for any other purpose than to harm the reputations and to threaten the persons being attacked by such statements." *Id.* at pp. 30-31. Put succinctly, Debtor Bundy willfully caused the St. Luke's Creditor's injuries because he deliberately and intentionally made and amplified the statements to hurt the St. Luke's Creditors and their property. *See also id.* at ¶¶ 59, 64. And the Idaho Court's findings and conclusions are identical to, and establish, the element of willfulness under Section 523(a)(6), because the latter also requires that the debtor intended to harm the creditor. *Moore*, 357 F.3d at 1129 (requiring that the debtor "desire to cause the consequences of his act or believe that the consequences are substantially certain to result"); *Mitsubishi Motors*, 235 B.R. at 656 (requiring "a deliberate or intentional injury, not merely a deliberate act that leads to injury").

> **b.    The Idaho Court Determined Debtor Bundy Caused a Malicious Injury to the St. Luke's Creditors.**

65.     A debtor causes a "malicious" injury within the meaning of § 523(a)(6) when his acts are "intentional, wrongful, and done without justification or excuse." *Bringhurst*, 569 B.R. at 823. Maliciousness considers the debtor's motives. *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 919 (B.A.P. 10th Cir. 2020).

66.     For example, a debtor's conduct was held malicious when his fraudulent actions were shown to benefit himself by "lining the pockets of his wholly owned limited liability company and his associates." *Glencove Holdings, LLC v. Bloom (In re Bloom)*, 634 B.R. 559, 598 (B.A.P. 10th Cir. 2021); *see also Trans-West, Inc. v. Mullins (In re Mullins)*, 2021 Bankr. LEXIS 1761, at *19 (B.A.P. 10th Cir. 2021) (affirming non-dischargeability holding as to debtor's wife who was a knowing participant in conversion of funds, as evidenced by the length of time of the conspiracy, her use of the funds, and the amount of the funds).

67.     Similarly, "without justification or excuse" means the debtor acted with a culpable state of mind regarding the actual injury caused to the creditor. *Smith*, 618 B.R. at 919.

Case 24-02130    Doc 36    Filed 05/23/25    Entered 05/23/25 15:33:48    Desc Main
Document       Page 21 of 28

Merely claiming a belief that one's actions were justified is insufficient where the totality of evidence demonstrates wrongful intent. *Id*. at 922 (rejecting debtor's justification where his "explanations were not credible" and emails demonstrated an "attitude of retribution" against the creditor). Courts evaluate a debtor's claimed justification in light of the full evidentiary record to determine whether the debtor's conduct was truly wrongful and lacking just cause. *Bloom*, 634 B.R. at 597–98 (rejecting the debtor's asserted justifications where the evidence showed he intentionally misled the creditor for personal gain).

68.     Here, the Idaho Court held that Debtor Bundy injured the St. Luke's Creditors intentionally, maliciously and without justification, just as § 523(a)(6) requires. *See Bringhurst*, 569 B.R. at 823. Specifically, the Idaho Court found that Debtor Bundy's and his codefendants' statements "were completely unfounded, false, made intentionally, and maliciously harmed the reputations of the [St. Luke's Creditors'] and others who were doxxed." Ex. H at p. 20, ¶ 76. The Idaho Court found that Debtor Bundy made the defamatory statements because his and his codefendant's business model is to "raise money for themselves or the organizations they control from followers based on false, fraudulent and defamatory statements." Ex. H. at p. 22, ¶ 81; *see also id.* at ¶ 65. Debtor Bundy made the "defamatory statements . . . as part of a tactical and sustained marketing campaign to defame and smear the reputations of the [St. Luke's Creditors], incite unlawful conduct by [Debtor Bundy's and his codefendants'] followers, create a fear of future physical harm to [the St. Luke's Creditors], and to create an incentive for followers to make donations to [Debtor Bundy and his codefendants] or organizations they controlled." *Id.* at p. 24, ¶ 89. Put succinctly, Debtor Bundy "used disinformation (misinformation that is intentionally spread) to harm [the St. Luke's Creditors]" on a long-term basis. *Id.* at p. 22, ¶¶ 81, 90.

69.     And the Idaho Court found that Debtor Bundy did not make and amplify the defamatory statements for any justifiable reason or excuse, as the court found expressly that the

statements were demonstrably false and were not protected political speech under the First Amendment. Ex. H at pp. 27-33. Instead, Debtor Bundy's motivation was to harm the St. Luke's Creditors and to provide himself financial and political gain. *See Smith*, 618 B.R. at 919 (wrongful motive demonstrates maliciousness); *Bloom*, 634 B.R. at 598 (personal profit establishes maliciousness); *Mullins*, 2021 Bankr. LEXIS 1761, at *19 (participating in conspiracy to convert funds and personally benefit establishes maliciousness). Specifically, the Idaho Court found that Debtor Bundy made defamatory statements about the St. Luke's Creditors "at his political events and made [them] for the indirect purpose of raising campaign contributions." Ex. H at p. 15, ¶ 60. Debtor Bundy's "marketing techniques and use of social media have the effect of disseminating knowingly defamatory information and disinformation to radicalize their followers and at the same time get media coverage of [his and his codefendants'] actions and raise monies for their organizations based on their defamatory statements." *Id.* at p. 17 ¶ 64. The Idaho Court found that Debtor Bundy also wanted his social media attack and protests "to prevent St. Luke's from providing services to others" while helping him elevate his own profile. *Id.* at p. 17, ¶ 64.

70.     Thus, not only did the Idaho Court find that Debtor Bundy intended to disrupt the St. Luke's Creditors' business, harm their reputations, and put them and their family members at risk of physical harm—but it also found that Debtor Bundy was motivated by personal financial and political gain when he harmed the St. Luke's Creditors. These findings more than cover the requirements for maliciousness under Section 523(a)(6).

71.     In sum, the St. Luke's Creditors are entitled to summary judgment on the second element of issue preclusion because the 2022 Lawsuit implicated the same "willful" and "malicious" elements as § 523(a)(6).

### 3.     The Idaho Court Actually Decided that Debtor Bundy Willfully and Maliciously Caused the St. Luke's Creditors' Injury.

72.    To establish this element, the issue must have been resolved, not merely

mentioned. *See, e.g.*, *Brown v. Indus. Special Indem. Fund*, 138 Idaho 493, 497, 65 P.3d 515,

519 (2003) (holding that mere recitation of an issue does not trigger collateral estoppel);

*Jackman v. Indus. Special Indem. Fund*, 129 Idaho 689, 691, 931 P.2d 1207, 1209 (1997)

(reasoning that whether an issue is actually decided "may be dependent on whether deciding the

issue was necessary to the prior judgment") (internal quotation marks omitted).

73.    Here, the Idaho Court did not simply mention that Debtor Bundy "willfully" and

"maliciously" caused the St. Luke's Creditors' injuries – although the Court certainly used those

very words multiple times. The Idaho Court actually decided that Debtor Bundy's and his co-

conspirators' conduct met both of these elements where necessary to enter a final Judgment for

damages and injunctive relief. *See Jackman*, 129 Idaho at 691, 931 P.2d at 1209 (whether issue

was actually decided can depend on whether it was necessary to the prior judgment); *Powell*, 120

Idaho at 709, 819 P.2d at 563 (determining element of "actually litigated" based on whether it

was "necessary to the judgment"); Stidham Dec., Ex. H (Findings and Conclusions necessary for

permanent injunction); *id.*, Ex. E (argument relating to joint and several liability); *id.*, Ex. A

(assessing damages jointly and severally against each defendant and setting forth permanent

injunction).

### 4.    <u>The Judgment Is a Final Judgment.</u>

74.    The St. Luke's Creditors are entitled to judgment as a matter of law on the fourth

element of issue preclusion because the Judgment is a final judgment on the merits under Idaho

law. *See Waller v. State, Dep't of Health & Welfare*, 146 Idaho 234, 237, 192 P.3d 1058, 1061

(2008) ("[A]bsent fraud or collusion, the principle of res judicata applies equally in cases of

default judgment"). Further, Debtor Bundy has not appealed the Judgment, and the time to file an

appeal has expired. *See* Ex. G (2022 Lawsuit Docket) (showing Judgment entered on August 29,

2023 and no notice of appeal filed by Debtor Bundy); Idaho App. R. 14(a) (providing 42-day period to appeal judgment).

75.     One of Debtor Bundy's co-defendants in the 2022 Lawsuit (Defendant Rodriguez) has an appeal pending. But a pending appeal does not change the finality of the Judgment. *See, e.g.*, *Pedersen v. Blythe*, 292 P.3d 182, 185 (Alaska 2012) (holding judgment on appeal final for preclusion purposes); *Walker v. Benz*, 914 So.2d 1262, 1267 (Miss. Ct. App. 2005) (same).[4] And in any event, nothing in Defendant Rodriguez's appeal can affect the Judgment as it relates to Debtor Bundy. Defendant Rodriguez did not appeal the amount of damages. *See* Stidham Dec., Ex. I. Rather, Defendant Rodriguez challenged default against him, which was entered as a sanction, and related aspects of Defendant Rodriguez's procedural due process rights. *Id.* Thus, at most, Defendant Rodriguez's appeal could affect his own liability and whether he must pay any of the Judgment. Nothing in the appeal affects Debtor Bundy's liability or amount of damages. And nothing in the appeal could alter the total amount of damages in the Judgment, jointly and severally assessed, which Defendant Rodriguez has not challenged. *See id*.

76.     Thus, the fourth element of issue preclusion is met because the Judgment is final.

### 5.      The Debtor is a Party to Both Lawsuits.

77.     Lastly, the fifth element of issue preclusion is established because Debtor Bundy was a party to the 2022 Lawsuit and is a party to this adversary proceeding. *See Ticor Title*, 157

---

[4] While Idaho courts have not yet ruled on whether a judgment pending appeal is a final judgment for preclusion purposes, the majority of courts hold that it is. *See, e.g.*, *Williams v. Swenson (In re Williams)*, 280 B.R. 857, 863 n.8 (9th Cir. B.A.P. 2002) ("California state law follows the minority position denying res judicata effect to state court judgments on appeal."); *Jennings v. Bodrick (In re Bodrick)*, 534 B.R. 738, 744 (Bankr. S.D. Ohio 2015) (following majority rule); *Pedersen*, 292 P.3d at 185 (same); *Walker*, 914 So.2d at 1267 (same); *Edwards v. Ghandour*, 159 P.3d 1086, 1092 (Nev. 2007), *overruled in part on other grounds by Five Star Capital Corp. v. Ruby*, 194 P.3d 709 (Nev. 2008) (same); *Sidney Coal Co., Inc. v. Massanari*, 221 F. Supp. 2d 755, 772 (E.D. Ky. 2002) (same); *Macfarlane v. Village of Scotia, N.Y.*, 86 F. Supp. 2d 60, 64-65 (N.D.N.Y. 2000) (same); *Timmons v. Special Ins. Servs.*, 984 F. Supp. 997, 1008 (E.D. Tex. 1997), *aff'd* 167 F.3d 537 (5th Cir. 1998) (same); *Nygaard v. United Parcel Serv. Gen. Servs. Co.*, 1 F. Supp. 2d 1173, 1182 (D. Or. 1998) (same). The majority rule applies the underlying principles of res judicata—to provide finality to the litigants—preventing relitigation of issues already decided by the court.

P.3d at 618 (the party against whom the issue is asserted was a party or in privity with a party to the litigation).

78.    In sum, Debtor Bundy chose not to participate in the 2022 Lawsuit because he wanted to capitalize on the harm he was willfully and maliciously inflicting on the St. Luke's Creditors while thwarting the Idaho Court's ability to stop him from spreading misinformation. But the Idaho Court and the St. Luke's Creditors pressed on to complete a 2-week jury trial on damages. As the Idaho Court found, Debtor Bundy had the opportunity to participate in that trial but chose not to. Under Idaho law he is now precluded from collaterally attacking the Idaho Court's determination that Debtor Bundy willfully and maliciously caused the St. Luke's Creditors to incur the Claim.

I.    **ALTERNATIVELY AND INDEPENDENTLY, SUMMARY JUDGMENT IS APPROPRIATE BECAUSE DEBTOR BUNDY HAS NOT DISPUTED THAT THE ACTS UNDERLYING THE JUDGMENT WERE WILLFUL AND MALICIOUS.**

79.    Summary judgment in the St. Luke's Creditors' favor is warranted also because Debtor Bundy has not denied the allegations of the Section 523 Complaint.

80.    In the Discloser, Debtor Bundy does not specifically deny making the defamatory statements. Instead, he attempts to generally deny any allegation that the St. Luke's Creditors have made in his bankruptcy case. But general denials are not permitted unless the defendant can, in good faith, deny every allegation in the pleading. F.R.C.P. 8(b)(2)-(3).  And Debtor Bundy cannot deny every allegation of the Complaint in good faith here. For instance, among many other allegations, Debtor Bundy cannot deny that he is presently a resident of Utah, that he was a resident of Idaho, that he has filed a bankruptcy petition in Case No. 24-23530 WTT before this Court, that this Court has jurisdiction, that the St. Luke's Creditors obtained a judgment against him for over $50 million, or that there is a permanent injunction against him. Dkt. 1 (Section 523 Complaint), ¶¶ 3, 10-11, 29. Debtor Bundy also cannot deny that after a two-week trial the Idaho Court entered findings and conclusions against him that he made intentional

25

and malicious defamatory statements falsely accusing the St. Luke's Creditors of heinous crimes with the purpose of causing them harm. *Id.*, ¶¶ 3, 31-32.

81.     Because the Discloser cannot be treated as a general denial, whether Debtor Bundy has contested the Section 523 Complaint must be determined allegation by allegation. *See* F.R.C.P. 8(b)(2)-(3).

82.     The Discloser does not deny the key allegations forming the basis of the Section 523 Complaint. The Discloser mainly addresses Debtor Bundy's supposed financial state and asset transfers. *See* Dkt. 253. It also attempts to contradict some of the allegations regarding the health of the Infant with various screen shots and fragments of the nearly 200-page medical record. *Id.* But, important to the analysis here, Debtor Bundy does not deny that he made the intentionally false statements identified by the Idaho Court, including his false accusations against the St. Luke's Creditors of committing crimes against children; or his knowing falsehoods that the Infant did not receive proper and necessary care from St. Luke's. *Compare id.*, *with* Dkt. 1, ¶¶ 19, 26, 31. He does not deny that he intended to harm, intimidate, and threaten the St. Luke's Creditors; that he doxxed the St. Luke's Creditors; that he launched a coordinated corporate attack against the St. Luke's Creditors with the intent to harm their reputations; or that he amplified the damage by using social media accounts and websites he controlled to spread his false narrative. *Compare* Dkt. 258, *with* Dkt. 1, ¶¶ 26, 31.

83.     These undenied allegations are admitted. *See* F.R.C.P. 8(b)(6) ("An allegation— other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied").  Consequently, summary judgment in favor of the St. Luke's Creditors is warranted for the separate reason that Debtor Bundy has not denied the allegations of the Section 523 Complaint. *See Perez v. El Tequila, LLC*, 847 F.3d 1247, 1254 (10th Cir. 2017) (affirming grant of summary judgment to plaintiff in FLSA case because defendant employer had failed to timely deny the material allegation in the complaint that

defendant's managers had altered time records to reduce the employees' hours shown as worked).

## <u>CONCLUSION</u>

For the foregoing reasons, St. Luke's Creditors respectfully request that the Court enter summary judgment against Debtor Bundy on their Section 523 Complaint, holding the entirety of their Claim non-dischargeable.

DATED this 23rd day of May, 2025.

HOLLAND & HART LLP


*/s/ Engels Tejeda*
Engels Tejeda (11427)
Erik F. Stidham (Admitted pro hac vice)

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

U.S. Trustee – trusttee@mbt-law.com

A copy of the foregoing was also mailed by overnight UPS and United States First Class Mail, postage thereon fully prepaid, to the judgment debtor, this 23rd day of May, 2025, addressed as follows:

| | |
|---|---|
| by Overnight UPS: | Ammon E. Bundy<br>896 E 400 S<br>New Harmony, UT 84757 |
| by U.S. First Class Mail: | Ammon E. Bundy<br>P.O. Box 1062<br>Cedar City, UT 84721-0991 |
| by Electronic Mail: | Ammon E. Bundy<br>aebundy@bundyfarms.com |

*/s/ Engels Tejeda*
Engels Tejeda
of Holland & Hart LLP

34492997_v6