**This order is SIGNED.**


**Dated: August 5, 2025**





**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>AMMON EDWARD BUNDY,<br><br>      Debtor. | Bankruptcy Number: 24-23530<br><br>Chapter 7 |
| St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, Ltd., Chris Roth, Natasha Erickson, M.D., and Tracy Jungman, NP,<br><br>      Plaintiffs,<br><br>vs.<br><br>Ammon Edward Bundy,<br><br>      Defendant. | Adversary Proceeding Number: 24-02130<br><br>Honorable William T. Thurman |

**MEMORANDUM DECISION GRANTING SUMMARY JUDGMENT**

### I.     INTRODUCTION AND JURISDICTION

Before the Court is the Motion for Summary Judgment (the "Motion") [Dkt. 36] filed by Plaintiffs St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, Ltd., Chris Roth, Natasha Erickson, M.D., and Tracy Jungman, NP (together the "Plaintiffs" or the "St. Luke's Creditors"). In support of the Motion, Erik Stidham, counsel for Plaintiffs, filed a Declaration to which he attached several exhibits. [Dkt. 37]. In response to the Motion, Defendant Ammon Bundy

("Defendant" or "Mr. Bundy") acting pro se filed an Objection and a Declaration in support thereof. [Dkts. 41, 42].

Responding to Mr. Bundy's Objection, Plaintiffs filed a Memorandum in Support of their Motion and a Second Declaration by Erik Stidham. [Dkts. 44, 45]. Mr. Bundy then filed a Response to Erik Stidham's Second Declaration. [Dkt. 46]. Finally, Mr. Bundy filed a Declaration in Support of Admissibility of Trial Audio and a Notice of Intent to Offer Trial Audio and Related Evidence in Response to Plaintiffs' Motion for Summary Judgment. [Dkts. 47, 48].

Plaintiffs properly served a Notice of Hearing on May 23, 2025 upon all parties in interest. [Dkt. 39]. The Court concludes that notice of the Motion was adequate and proper.

The Court has jurisdiction over this matter. The Court's jurisdiction over this case is properly invoked under 28 U.S.C. §§ 157(a) and 1334(b), as well as the United States District Court for the District of Utah's Order of Reference at DUCivR 83-6.1. Under 28 U.S.C. § 157(b)(1), the Court may hear and determine the present matter/motion by entry of a final order because it is a core proceeding as it arises under the Bankruptcy Code in this bankruptcy case and may also be included as a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I).

To the extent applicable, this memorandum decision constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable here by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). Any of the findings of fact herein are also deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law herein are similarly deemed to be findings of fact and shall be equally binding as both.

Venue has not been contested and is proper under 28 U.S.C. § 1408.

The Court conducted a hearing on Plaintiffs' Motion on July 15, 2025. [Dkt. 49]. Engels Tejeda, Erik Stidham, and Jennifer Jensen appeared on behalf of Plaintiffs. Mr. Bundy appeared on behalf of himself. At the hearing, the Court heard arguments from all parties and took this matter under advisement.[1]

Through their Motion, Plaintiffs seek a determination that a debt incurred by Mr. Bundy is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). For the reasons explained below, the Court grants Plaintiffs' Motion and enters judgment in their favor.

## II.    STANDARD

Under Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court is required to grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Substantive law determines which facts are material and which are not. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* As such, if no reasonable factfinder

---

[1] At the start of the hearing, the Court addressed preliminary arguments made in Mr. Bundy's Declaration in Support of Admissibility of Trial Audio and his Notice of Intent to Offer Trial Audio [Dkts. 47, 48], which the Court interpreted as a request to admit certain video exhibits into evidence. These video exhibits were purported to address substantive issues concerning litigation in the Idaho Lawsuit, in Ada County, Idaho. Ruling from the bench, the Court excluded all video exhibits from consideration in this Motion, both for Plaintiffs and Defendant, on grounds that the video exhibits were not necessary to decide the Motion [*See* Dkt. 49–Audio Recording of hearing on July 15, 2025, at 2:03p.m.–2:04p.m.].

could return a verdict for the nonmoving party, and if the movant is entitled to judgment as a matter of law, summary judgment must be granted.

The moving party bears the initial burden to show that it is entitled to summary judgment, including the burden to properly support its summary judgment motion as required by Rule 56(c). *Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002). Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).

The nonmoving party may not rely solely on allegations in the pleadings but must instead show "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. When considering a motion for summary judgment, the Court views the record "liberally in favor of the party opposing the summary judgment." *McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987). However, at this stage, the Court does not weigh evidence or make credibility determinations. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). It is under these principles that the Court determines the present Motion.

## III.   <u>STATEMENT OF FACTS</u>

The facts of this case are many and complicated. But for the purposes of this Motion, they are straightforward and easily recited. The Court finds the following undisputed material facts.

1.      On May 11, 2022, the St. Luke's Creditors filed a lawsuit against Mr. Bundy and other individuals and entities in the Idaho Fourth Judicial District Court (the "Idaho Court" and

the "Idaho Lawsuit"). [Dkt. 37-7, Pgs. 5–6].[2] The Idaho Lawsuit was titled *St. Luke's Health System, Ltd. et al. v. Ammon Bundy et al.* and was numbered CV01-22-06789. [Dkt. 37, Pg. 2]. The St. Luke's Creditors amended their complaint four times and filed their Fourth Amended Complaint on or around March 3, 2023. [*Id.*]. The Fourth Amended Complaint became the operative complaint in the Idaho Lawsuit. [*Id.*].

2.      The St. Luke's Creditors asserted eight causes of action against the defendants, including Mr. Bundy, in their Fourth Amended Complaint: (1) Defamation; (2) Invasion of Privacy; (3) Intentional Infliction of Emotional Distress; (4) Common Law Trespass; (5) Statutory Trespass; (6) Unfair Business Practices; (7) violation of the Idaho Charitable Solicitation Act; and (8) Civil Conspiracy. [Dkt. 37-2, Pgs. 30–41].

3.      The allegations of the Idaho Lawsuit concerned certain statements Mr. Bundy and the other defendants made and actions they took during 2022 and 2023 in Idaho. [*Id.* at 9–30]. These statements and actions pertained to certain medical providers and administrators employed by St. Luke's Health System, as well as the St. Luke's Health System itself. [*Id.*]. These statements and actions generally began after an infant was taken into, and ultimately released from, protective custody by the Idaho Department of Health and Welfare. [*Id.*].

4.      Mr. Bundy was personally served with the Fourth Amended Complaint on or around March 3, 2023. [Dkt. 37-10, Pg. 5]. Mr. Bundy had been previously served with the St. Luke's Creditors' previous complaints in the Idaho Lawsuit on or around May 12, 2022, July 16, 2022, and February 21, 2023. [Dkt. 37-7, Pgs. 8, 13, 38].

---

[2] The Court will cite to the page numbers as set forth in the ECF filing, not the page numbers as marked by counsel or Defendant.

5.      In the Idaho Lawsuit, the St. Luke's Creditors' Fourth Amended Complaint prayed for relief in the form of "damages in the sum to be proven at trial but in no event less than $250,000," for "reasonable attorneys' fees and costs," for "an award of punitive damages in the sum to be proven at trial," and for "injunctive relief." [Dkt. 37-2, Pg. 42].

6.      Mr. Bundy was aware of the Idaho Lawsuit and elected not to participate in the same.

7.      On June 30, 2023, the Idaho Court issued an order affirming that a default had been entered in favor of the St. Luke's Creditors and against all defendants, including Mr. Bundy. [Dkt. 37-6, Pg. 3]. The Idaho Court then scheduled a jury trial on the issue of damages caused by the defendants for July 2023. [*Id.* at 3–7]. Notice of the trial was properly served on Mr. Bundy via email to aebundy@bundyfarms.com and via U.S. Mail to Mr. Bundy's then residence in Emmett, Idaho. [*Id.* at 8].

8.      In July 2023, the St. Luke's Creditors participated in a multi-day jury trial before the Idaho Court regarding the existence and amount of damages the St. Luke's Creditors had allegedly suffered during events which precipitated the Idaho Lawsuit. [Dkt. 37-7, Pg. 72; Dkt. 37-6, Pgs. 6–7].

9.      On or around July 24, 2023, a jury awarded the St. Luke's Creditors around $52 million in compensatory and punitive damages arising from the claims for defamation, invasion of privacy, intentional infliction of emotional distress, common law and statutory trespass, unfair business practices, violation of the Idaho Charitable Solicitation Act, and civil conspiracy, which the Idaho Court later incorporated into a default judgment. [Dkt. 37-7, Pgs. 74–75] (indicating a

hearing held on July 24, 2023, after the jury trial ended and after a Third Special Verdict Form was filed).

10.    On August 25, 2023, the Idaho Court entered Findings of Fact, Conclusions of Law, and an Order for Permanent Injunctive Relief for Plaintiffs (the "Idaho Findings and Conclusions"). [Dkt. 37-8]. The Idaho Court found that:

   a.   "Immediately after the CPS referral was made and the Infant was removed from the parents, the Defendants Bundy and Rodriguez, through their own statements . . . began doxxing and intimidating the Plaintiffs . . . Doxxing includes publicly identifying or publishing private information about a person as a form of punishment or revenge." [*Id.* at 15, footnote 3].

   b.   "Defendants' statements were intended to damage the reputations of the Plaintiffs; invade the privacy of Mr. Roth, Dr. Erickson, and NP Jungman; to shut down St. Luke's Hospital; and to threaten harm to those involved in the CPS case involving the Infant." [*Id.* at 15].

   c.   "[Mr.] Bundy . . . used the tactic of 'public shaming' through false and defamatory narratives to intimidate and defame the Plaintiffs. This included but was not limited to accusing the Plaintiffs to be involved in kidnapping, child trafficking, child abduction, abusing children, and stealing children for money and pedophilia. This intimidation also included releasing private information about Mr. Roth, Dr. Erickson[,] and NP Jungman which put these Plaintiffs and their families at risk of harm." [*Id.* at 16].

d.  "The Defendants wanted their messages to go viral as well as deep and wide, and to have lasting effects. The Defendants wanted their social media attack and protests to prevent St. Luke's from providing services to others." [*Id.* at 17–18].

e.  "The intentional, materially false[,] and malicious defamatory statements by the Defendants include, but are not limited to, the following . . ." [*Id.* at 19].

  i.  "St. Luke's, St. Luke's management, law enforcement, DHW, the courts, and the medical practitioners are all involved in a conspiracy to engage in criminal child trafficking, kidnapping children[,] and stealing children to make money." [*Id.* at 20].

  ii.  "The medical providers are pedophiles who want to abuse children and engage in child trafficking." [*Id.*].

f.  "The defamatory statements by the Defendants were completely unfounded, false, made intentionally, and maliciously harmed the reputations of the Plaintiffs and others who were doxxed. These false statements invaded the privacy of Plaintiffs Mr. Roth, Dr. Erickson[,] and NP Jungman by portraying them in a false light as persons who harm children. The defamatory statements and conduct of the Defendants intentionally inflicted emotional distress on Plaintiffs Mr. Roth, Dr. Erickson[,] and NP Jungman." [*Id.* at 21].

g.  "As to the defamation claims, the Court finds: a. The Defendants communicated information concerning the Plaintiffs to others; b. The information impugned the honesty, integrity, virtue[,] or reputation of the Plaintiffs or exposed the Plaintiffs to public hatred, contempt[,] or ridicule; c. The information was false; d. The

Defendants knew it was false or reasonably should have known that it was false; and e. Plaintiffs suffered injury caused to [sic] the defamation." [*Id.* at 24].

h.  "As to the Invasion of Privacy claims, the Court finds: a. The Defendants placed Mr. Roth, Dr. Erickson, and NP Jungman in a false light in the public eye by publicly disclosing some falsity or fiction concerning Mr. Roth, Dr. Erickson, and NP Jungman. b. A disclosure of some falsity or fiction means that a publication or publications by Defendants were materially false. c. Plaintiffs Mr. Roth, Dr. Erickson[,] and NP Jungman suffered injury caused by the false light invasion of their privacy." [*Id.* at 24–25].

i.  "As to the Intentional Infliction of Emotional Distress claims, the Court finds: a. Defendants engaged in intentional or reckless conduct; b. That was extreme or outrageous; c. Causing severe emotional distress to Mr. Roth, Dr. Erickson, and NP Jungman; and d. Plaintiffs Mr. Roth, Dr. Erickson[,] and NP Jungman were injured[,] and the emotional distress was proximately caused by Defendants' conduct." [*Id.* at 25].

j.  "[T]he defamatory statements by Defendants were made intentionally to get others to believe 'as true' that Plaintiffs and anyone else involved in the CPS investigation and court proceedings or medical treatment of the Infant were committing heinous acts against the Infant, and that St. Luke's and the other Plaintiffs were 'wicked' and 'evil' persons such that they should be removed from their professions and the hospital shut down from providing all medical care to anyone in our community." [*Id.* at 30].

k. "[T]he Defendants' statements in every possible form were intentional and with reckless disregard for the truth, fraudulent, malicious[,] and defamatory." [*Id.*].

l. "If Defendants wanted to present a defense of the 'truth' of their statements, they could have participated in this lawsuit or at least the damages trial. They did not." [*Id.* at 33].

11. On August 29, 2023, the Clerk of Court of the Idaho Court entered a default judgment against Mr. Bundy, jointly and severally with the other defendants in the Idaho Lawsuit (the "Idaho Default Judgment"). [Dkt. 37-1].

12. As against Mr. Bundy, the Idaho Default Judgment consisted of:

a. $19,125,000.00 to St. Luke's Health System, Ltd. and St. Luke's Regional Medical Center, Ltd. [*Id.* at 4].

b. Attorney's fees and costs of St. Luke's Health System, Ltd. and St. Luke's Regional Medical Center, Ltd. of $13,443.21. [*Id.*].[3]

c. $8,500,000.00 to Chris Roth. [*Id.* at 4–5].

d. $12,125,000.00 to Natasha Erickson. [*Id.* at 5].

e. $12,125,000.00 to Tracy Jungman. [*Id.*].

f. Interest on the judgment at a rate of 10.250% per annum. [*Id.*].

g. Except for the attorneys' fees and costs, the Idaho Default Judgment was issued jointly and severally as against all defendants. [*Id.* at 4–5].

---

[3] Attorneys' fees and costs were ordered against the other defendants in the Idaho Lawsuit (Ammon Bundy for Governor, Diego Rodriguez, Freedom Man Press, Freedom Man PAC, and People's Rights Network). These fees and costs are irrelevant to the Motion before the Court.

13.    Mr. Bundy has not sought to appeal or vacate the Idaho Default Judgment, although his co-defendant, Mr. Diego Rodriguez, has. [Dkt. 37-7, Pgs. 79–80; Dkt. 37-9].

## IV.    ANALYSIS

11 U.S.C. § 523(a)(6) states, "[a] discharge under section 727 . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." Plaintiffs advance two arguments as to why they are entitled to summary judgment for their 11 U.S.C. § 523(a)(6) claim for non-dischargeability of the Idaho Default Judgment.

First, Plaintiffs contend that the Idaho Court fully adjudicated that Mr. Bundy acted in a willful and malicious manner, and Mr. Bundy is precluded from re-litigating these issues. Plaintiffs argue that this Court must give preclusive effect to the Idaho Findings and Conclusions, which they believe establish the "willful" and "malicious" elements of § 523(a)(6). Second, in the alternative, Plaintiffs contend that Mr. Bundy's putative answer, which he filed on December 17, 2024 at docket number 253 in the main Case 24-23530 (*In re Ammon E. Bundy*)[4], failed to deny Plaintiffs' allegations as pled in their Complaint [Dkt. 1], which constitutes an admission of the truth of those allegations under Federal Rule of Civil Procedure 8(b)(6) (made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7008).

Mr. Bundy has responded to both arguments. However, before the Court will analyze Mr. Bundy's responses, it must address some preliminary concerns about the arguments Mr. Bundy has asserted.

---

[4] The Court takes judicial notice that it entered an order on March 20, 2025 [Dkt. 27] granting Defendant's Motion to Vacate Default Certificate. [Dkts. 9, 15]. At a hearing conducted on March 20, 2025 [Dkt. 26], the Court deemed Mr. Bundy's filed document at Docket 253 in Case 24-23530 an answer in this adversary proceeding.

A. <u>The United States Constitution prohibits reconsideration of the Idaho Findings and Conclusions.</u>

In his Objection, Mr. Bundy has attacked certain facts underlying the Idaho Lawsuit. [Dkt. 41, Pgs. 4–9]. He has also raised several arguments about the constitutionality of his speech which precipitated the Idaho Lawsuit, as well as arguments accusing the St. Luke's Creditors of bias and misconduct during the Idaho Lawsuit. [*Id.* at 6–9]. Under longstanding Supreme Court precedent, namely the *Rooker-Feldman* doctrine, this Court may not act as an appellate court for the Idaho Lawsuit and may not therefore entertain these arguments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Further, pursuant to the United States Constitution's Full Faith and Credit Clause, this Court may not re-examine the bases upon which the Idaho Court awarded the Idaho Default Judgment.

The *Rooker-Feldman* doctrine "bars federal district courts from exercising appellate jurisdiction over state-court judgments." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1235 (10th Cir. 2006). This legal doctrine originated in the pair of United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ("Rooker") and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ("Feldman"). These holdings sought to address "cases brought by state-court losers complaining of injuries caused by state-court judgments." *Exxon Mobil*, 544 U.S. at 284. *Rooker* and *Feldman* operate as "a firm jurisdictional bar" against federal courts re-opening state court judgments. *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 746 (10th Cir. 2023). The doctrine also has statutory roots—it "arises by negative inference from 28 U.S.C. § 1257(a), which allows parties to state court judgments to seek direct review in the Supreme Court of the United States, but not to appeal to the lower federal courts." *Copeland et al. v. C.A.A.I.R. et al.*, No. 21-

5024, 2023 WL 3166345, at *5 (10th Cir. May 1, 2023) (quoting *Mo's Express*, 441 F.3d at 1233).
The Court considers the *Rooker-Feldman* doctrine controlling as well as persuasive here.

This Court is a federal court and therefore falls within the purview of the *Rooker-Feldman*
doctrine. The Idaho Default Judgment is a final state court judgment. Mr. Bundy's arguments seek
to attack the validity of the Idaho Default Judgment and the conduct of the St. Luke's Creditors,
which makes them appropriate in an appeal to a higher Idaho state court (should the applicable
Idaho rules authorize an appeal) but not in a proceeding before a United States federal court.
Indeed, even though Mr. Bundy has raised constitutional arguments in his briefings, "attempts to
recast state court losses as deprivations of constitutional rights do not overcome the *Rooker-
Feldman* jurisdictional bar." *Bruce*, 57 F.4th at 746.

The matter before this Court only concerns whether the undisputed facts stated constitute
a willful and malicious injury to the St. Luke's Creditors under 11 U.S.C. § 523(a)(6). The Court
cannot make a determination as to whether Mr. Bundy's conduct which precipitated the Idaho
Lawsuit was appropriate or not.

Rather, this Court is bound, under the United States Constitution, to give full faith and
credit to the Idaho Default Judgment and refrain from wading into the merits of that case. *See* U.S.
Const., Art. IV, § 1. "The full faith and credit clause of the Constitution precludes any inquiry into
the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal
principles on which the judgment is based." *Milliken v. Meyer*, 311 U.S. 457, 462 (1940). "A final
judgment in one State, if rendered by a court with adjudicatory authority over the subject matter
and persons governed by the judgment, qualifies for recognition throughout the land." *Baker ex
rel. Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998). The Idaho Court had proper

jurisdiction over Mr. Bundy and over the St. Luke's Creditors. Therefore, this Court may not wade

into the merits behind the Idaho Default Judgment.

Finally, the Court is mindful of the United States Supreme Court case of *Brown v. Felsen*,

442 U.S. 127 (1979). In *Brown v. Felsen*, the Supreme Court held that bankruptcy courts may

consider extrinsic evidence when evaluating a *claim* preclusion argument in a nondischargeability

lawsuit. Notably, the Supreme Court wrote,

> Refusing to apply res judicata here [to a non-dischargeability action] would permit the
> bankruptcy court to make an accurate determination whether respondent in fact committed
> the deceit, fraud, and malicious conversion which petitioner alleges. These questions are
> . . . the type of question[s] Congress intended that the bankruptcy court would resolve. That
> court can weigh all the evidence, and it can also take into account whether or not
> petitioner's failure to press these allegations at an earlier time betrays a weakness in his
> case on the merits.
>
> *Id.* at 138.

However, the Supreme Court in *Brown v. Felsen* later expressly stated that its holding does

not extend to *issue* preclusion arguments (also known as collateral estoppel). The Supreme Court

wrote,

> This case concerns res judicata only, and not the narrower principle of collateral estoppel.
> Whereas res judicata forecloses all that which might have been litigated previously,
> collateral estoppel treats as final only those questions actually and necessarily decided in a
> prior suit. If, in the course of adjudicating a state-law question, a state court should
> determine factual issues using standards identical to those of § 17 [the predecessor of 11
> U.S.C § 523], then collateral estoppel, in the absence of countervailing statutory policy,
> would bar relitigation of those issues in the bankruptcy court.
>
> *Id.* at 139 n.10 (citations omitted).[5]

---

[5] Additionally, the factual circumstances of *Brown v. Felsen* distinguish it from the case at hand. In *Brown v. Felsen*,
the judgment precipitating the res judicata argument arose through a stipulation between the parties and not through
the full adjudicatory process. *See id.* at 128 ("The suit was settled by a stipulation . . . Neither the stipulation nor the
resulting judgment indicated the cause of action on which respondent's liability to petitioner was based. Because the
case was settled, respondent's sworn deposition was never made part of the court record."). Conversely, here, the issue

14

Because the St. Luke's Creditors raised their first argument under the issue preclusion doctrine, *Brown v. Felson*'s holding is inapplicable. The Court may and will therefore consider each argument advanced by the St. Luke's Creditors in turn.

B. <u>Issue preclusion is applicable and must be applied.</u>

The doctrine of issue preclusion "bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Park Lake Res. LLC v. U.S. Dep't Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004). Issue preclusion "refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *N.H. v. Maine*, 532 U.S. 742, 748–49 (2001).

Issue preclusion applies in non-dischargeability proceedings arising under 11 U.S.C. § 523. *See Grogan v. Garner,* 498 U.S. 279, 284 n.11 (1991) ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). *See also Berrien v. Van Vuuren (In re Berrien)*, 280 Fed. Appx. 762, 766 (10th Cir. 2008) (unpublished) (affirming the application of issue preclusion in a proceeding under 11 U.S.C. § 523(a)(6)); *Delfino v. Moore (In re Moore)*, 346 Fed. Appx. 321, 322–23 (10th Cir. 2009) (unpublished) (same). "A judgment of a court having jurisdiction of the parties and of the subject-matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default." *Riehle v. Margolies*, 279 U.S. 218, 225 (1929).

When analyzing whether a prior judgment is entitled to preclusive effect, federal courts must "refer to the preclusion law of the State in which judgment was rendered." *Marrese v. Am.*

---

of Mr. Bundy's liability was adjudicated by the Idaho Court. The Idaho Court then made extensive findings of fact and conclusions of law, upon a significant record, as to the extent of the damages incurred by Plaintiffs.

*Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). This principle arises under the Full

Faith and Credit Clause of the United States Constitution and under the federal statute, 28 U.S.C.

§ 1738. *See Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 883 (B.A.P. 10th Cir. 2002) ("The Full

Faith and Credit Statute directs a federal court to look to the preclusion law of the state in which

the judgment was rendered."). Because the Idaho Default Judgment was entered in Idaho, Idaho

law applies. If under Idaho law issue preclusion is appropriate, then the United States Constitution

would bar re-litigation of the issue of Mr. Bundy's alleged willfulness and maliciousness, and the

St. Luke's Creditors would prevail on their Motion.

The Court must therefore examine Idaho law. Under Idaho law,

[f]ive factors are required in order for issue preclusion to bar the relitigation of an issue
determined in a prior proceeding: (1) the party against whom the earlier decision was
asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2)
the issue decided in the prior litigation was identical to the issue presented in the present
action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4)
there was a final judgment on the merits in the prior litigation; and (5) the party against
whom the issue is asserted was a party or in privity with a party to the litigation.

*Ticor Title Co. v. Stanion*, 157 P.3d 613, 618 (Idaho 2007) (citation omitted).

To Plaintiffs, the issues of whether Defendant Bundy willfully and maliciously injured

them and their property have already been adjudicated in the Idaho Default Judgment. Mr. Bundy

has objected, contending that he was "not present, was unrepresented, and was given no

opportunity to challenge the proposed findings or offer contrary evidence [to the Idaho Default

Judgment]." [Dkt. 41, Pgs. 2–3]. As Mr. Bundy is proceeding pro se, the Court will "liberally

construe his filings and hold them to a 'less stringent standard' than those drafted by lawyers."

*Biers v. Dentons US LLP et al.*, No. 24-4087, 2025 WL 1733467, at *3 (10th Cir. June 23, 2025)

(quoting *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)). However,

per the Tenth Circuit's direction, the Court cannot "act as his advocate and . . . [cannot] take on the

responsibility of serving as his attorney in constructing arguments." *Id.* (quoting *Garrett*, 425 F.3d at 840).

The Court interprets Mr. Bundy's assertion as an argument against elements one, three, and four of the Idaho issue preclusion doctrine. Mr. Bundy also contends that he did not act willfully or maliciously when he engaged in the conduct precipitating the Idaho Lawsuit. [Dkt. 41, Pgs. 4–6]. Although the Court will not consider this argument insofar as it attempts to re-litigate facts which precipitated the Idaho Default Judgment, *see* Section IV(A), *supra*, the Court will construe this argument as an objection to element two of the Idaho issue preclusion doctrine—that the elements of the St. Luke's Creditors' causes of action in the Idaho Lawsuit do not fit within the "willful and malicious" standard of 11 U.S.C. § 523(a)(6).

The Court recognizes that Mr. Bundy has objected to elements one through four of the Idaho issue preclusion doctrine. The Court will analyze each element of Idaho's issue preclusion doctrine in turn.

1. *Whether Mr. Bundy had a full and fair opportunity to litigate the issues adjudicated in the Idaho Lawsuit.*

Mr. Bundy first contends that he "was not present [during the Idaho Lawsuit process] . . . and was given no opportunity to challenge the proposed findings or offer contrary evidence." [Dkt. 41, Pgs. 2–3]. However, the record before the Court indicates that Mr. Bundy was given notice of the Idaho Lawsuit several different times—when the St. Luke's Creditors first filed their complaint, as well as when the St. Luke's Creditors amended their complaint. Filed returns of service demonstrate that Mr. Bundy received process each time a new complaint was filed.[6] The

---

[6] *See* Dkt. 37-7, Pg. 8 (Return of Service for the First Complaint on May 12, 2022); Pg. 13 (Return of Service for the Second Amended Complaint on July 16, 2022); Pg. 38 (Declaration of Service for the Third Amended Complaint on February 21, 2023); Pg. 43 (Return of Service for the Fourth Amended Complaint on March 3, 2023).

Declaration of Service on Mr. Bundy for the Fourth Amended Complaint states that Mr. Bundy was personally served with process on March 3, 2023. [Dkt. 37-10, Pg. 5]. This fact demonstrates that Mr. Bundy had knowledge of the Idaho Lawsuit's pendency and an opportunity to participate.

Further, in the Idaho Findings and Conclusions, the Idaho Court wrote that "[i]f Defendants wanted to present a defense of the 'truth' of their statements, they could have participated in this lawsuit or at least the damages trial. They did not." [Dkt. 37-8, Pg. 33]. This statement entails the conclusion that Mr. Bundy had an opportunity to defend himself during the Idaho Lawsuit.[7]

That Defendant Bundy received notice of and failed to assert his interests at trial in Idaho demonstrates that he made a conscious choice not to engage with the Idaho Lawsuit or defend himself. He also had a full and fair opportunity to contest the jury trial on damages but elected not to. [Dkt. 37-6, Pg. 3] ("No Defendant appeared at the Status Conference. At that hearing, the Court . . . specifically changed the nature of the default judgment . . . to [a] jury trial on damages and because of that ruling exercised its discretion to amend certain sanctions against defaulted Defendants to allow for due process rights of the Defendants to challenge damages determination by the jury.").

Under Idaho law, an individual has a full and fair opportunity to litigate when he declines to answer a complaint and a default judgment is entered against him. *See Or. Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 218 P.3d 391, 395–96 (Idaho 2009); *Lewiston Lime Co. v. Barney*, 394 P.2d 323, 328 (Idaho 1964) ("To the extent that any issues raised in the present proceeding were litigated

---

[7] This statement from the Idaho Court also raises an additional issue of whether, under the Full Faith and Credit Clause, this Court must accept as a found fact that Mr. Bundy had a fair opportunity to participate in the Idaho Lawsuit. However, because this Court has concluded that Mr. Bundy had a full opportunity to participate in the Idaho Lawsuit, it does not need to decide this issue.

in case No. 5769, the principle of res judicata applies against the appellants . . . even though the judgment in case No. 5769 was entered by default."). In Idaho, "the principle of *res judicata* applies equally in cases of default judgment." *Waller v. State, Dep't of Health & Welfare*, 192 P.3d 1058, 1062 (Idaho 2008).

Mr. Bundy had an equal incentive to fully and vigorously litigate in the Idaho Lawsuit as he does in this proceeding. Both proceedings involved significant amounts in controversy, both proceedings involved the same opposing parties, and the issue of Mr. Bundy's willfulness and maliciousness were central to the causes of actions in the Idaho Lawsuit.

The Court therefore concludes that Mr. Bundy had a full and fair opportunity to participate in the Idaho Lawsuit, including the trial on damages. [Dkt. 37-6, Pg. 8].

2.  *Whether the causes of action alleged in the Idaho Lawsuit contain identical willful and malicious elements as under 11 U.S.C. § 523(a)(6).*

For the issues decided in the Idaho Lawsuit to be identical to the issues presented in this present action, there must exist identical "willful" and "malicious" elements in the Idaho causes of actions as under 11 U.S.C. § 523(a)(6). *See Ticor Title Co.*, 157 P.3d at 618 (listing the second element of issue preclusion under Idaho law).

"[P]roof of a 'willful and malicious injury' under § 523(a)(6) requires proof of two distinct elements — the injury must be both 'willful' *and* 'malicious.'" *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 912 (B.A.P. 10th Cir. 2020).

Under 11 U.S.C. § 523(a)(6), "willfulness" means "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Mitsubishi Motors Credit Am. v. Longley (In re Longley)*, 235 B.R. 651, 656 (B.A.P. 10th Cir. 1999) (quoting *Kawaauhau v. Geiger*, 523

U.S. 57, 61 (1998)). "This narrow reading of 'willful' is akin to the standard of deliberate injury necessary for an intentional tort." *Id.* "The willfulness requirement is met when the debtor believes that injury is substantially certain to result from his own conduct." *N2 Packaging Sys., LLC v. Nebeker (In re Nebeker)*, 646 B.R. 294, 305 (Bankr. D. Idaho 2022) (citation omitted) (quotation omitted). "A willful injury may be established by direct evidence that the debtor acted with the specific intent to harm a creditor or the creditor's property, or by indirect evidence that the debtor desired to cause the injury or believed the injury was substantially certain to occur." *In re Smith*, 618 B.R. at 912.

Under 11 U.S.C. § 523(a)(6), an action is "malicious" if it is "intentional, wrongful, and done without justification or excuse." *Utah Behav. Servs. v. Bringhurst (In re Bringhurst)*, 569 B.R. 814, 823 (Bankr. D. Utah 2017). Maliciousness considers the debtor's motives and focuses on whether there exist any excuses to the action. "[A]ll the surrounding circumstances, including any justification or excuse offered by the debtor, are relevant to determine whether the debtor acted with a culpable state of mind." *Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir. 1993). "For an injury to be 'malicious,' therefore, the debtor's actions must be wrongful." *In re Smith*, 618 B.R. at 919.

The Idaho Default Judgement contained eight causes of action: (1) defamation; (2) invasion of privacy, (3) intentional infliction of emotional distress, (4) common law trespass, (5) statutory trespass, (6) unfair business practices, (7) violation of the Idaho Charitable Solicitation Act, and (8) civil conspiracy. [Dkt. 37-2, Pgs. 30–41]. The claims for common law and statutory trespass, unfair business practices, violation of the Idaho Charitable Solicitation Act, and civil conspiracy do not contain willful and malicious elements. They are therefore ineligible for issue preclusion under § 523(a)(6) because their elements do not overlap. *See Ticor Title Co.*, 157 P.3d at 618.

That leaves Plaintiffs' defamation claim, invasion of privacy claim, and intentional infliction of emotional distress claim. The Court has reviewed the record from the Idaho Lawsuit as provided to this Court through the parties' briefs. After due consideration, the Court determines that the defamation claim contains the necessary elements of willfulness and maliciousness under Idaho law, and the Idaho Court made sufficient findings of those elements to constitute identical issues to a § 523(a)(6) claim. However, under Idaho law, the invasion of privacy and intentional infliction of emotional distress claims do not entail willful and malicious elements, meaning that their elements are not "identical to the issue[s] presented in the present action." *Id.*

a. Plaintiffs' defamation claim sufficiently overlaps with the elements of § 523(a)(6).

Under Idaho law, "in a defamation action, a plaintiff must prove that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication." *Elliott v. Murdock*, 385 P.3d 459, 465 (Idaho 2016) (quoting *Clark v. Spokesman–Review*, 163 P.3d 216, 219 (Idaho 2007)). "A defamatory statement is one that tend[s] to harm a person's reputation, [usually] by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business." *Id.* (quoting *Defamatory*, Black's Law Dictionary (10th ed. 2014)). And "false statements of fact are actionable." *Id.*

The Idaho Default Judgment contained the following findings regarding Plaintiffs' defamation claim—

> a. The Defendants communicated information concerning the Plaintiffs to others; b. The information impugned the honesty, integrity, virtue or reputation of the Plaintiffs or exposed the Plaintiffs to public hatred, contempt or ridicule; c. The information was false; d. The Defendants knew it was false or reasonably should have known that it was false; and e. Plaintiffs suffered injury caused to [sic] the defamation.

[Dkt. 37-8, Pg. 24].

The Idaho Default Judgment also contained specific findings and conclusions regarding the defamation cause of action, including:

a.  "Defendants' statements were intended to damage the reputations of the Plaintiffs; invade the privacy of Mr. Roth, Dr. Erickson, and NP Jungman; to shut down St. Luke's Hospital; and to threaten harm to those involved in the CPS case involving the Infant." [*Id.* at 15].

b.  "The Defendants wanted their messages to go viral as well as deep and wide, and to have lasting effects. The Defendants wanted their social media attack and protests to prevent St. Luke's from providing services to others." [*Id.* at 17–18].

c.  "The intentional, materially false[,] and malicious defamatory statements by the Defendants include, but are not limited to, the following . . ." [*Id.* at 19].

    i.   "St. Luke's, St. Luke's management, law enforcement, DHW, the courts, and the medical practitioners are all involved in a conspiracy to engage in criminal child trafficking, kidnapping children[,] and stealing children to make money." [*Id.* at 20].

    ii.  "The medical providers are pedophiles who want to abuse children and engage in child trafficking." [*Id.*].

d.  "The defamatory statements by the Defendants were completely unfounded, false, made intentionally, and maliciously harmed the reputations of the Plaintiffs and others who were doxxed." [*Id.* at 21].

e.  "[T]he defamatory statements by Defendants were made intentionally to get others to believe 'as true' that Plaintiffs and anyone else involved in the CPS investigation and court proceedings or medical treatment of the Infant were committing heinous acts

against the Infant, and that St. Luke's and the other Plaintiffs were 'wicked' and 'evil' persons such that they should be removed from their professions and the hospital shut down from providing all medical care to anyone in our community." [*Id.* at 30].

The Court adopts the Tenth Circuit Bankruptcy Appellate Panel's understanding of "willful" as a "deliberate or intentional injury." *Mitsubishi Motors Credit Am. v. Longley (In re Longley)*, 235 B.R. 651, 656 (10th Cir. B.A.P. 1999) (quotation omitted) (citation omitted). Applying that definition to the findings of the Idaho Court, this Court concludes that the Idaho defamation cause of action entails an element of willfulness and therefore ports over to § 523(a)(6).

Then, turning to whether the Idaho Default Judgment's findings entailed a "malicious" element, the Court is persuaded by the reasoning from *Utah Behavior Services v. Bringhurst (In re Bringhurst)*, 569 B.R. 814, 823 (Bankr. D. Utah 2017). *Bringhurst* states that a malicious action is one that is "intentional, wrongful, and done without justification or excuse." *Id.* Indubitably, a published false statement of fact that causes another to be subjected to public contempt, disgrace, or ridicule is without justification and wrongful. Such a statement is both factually false and harms the subject of the statement. It necessarily has no justification. Indeed here, the content of the statements is defamatory *per se* under Idaho law. *See Siercke v. Siercke*, 476 P.3d 376, 386 (Idaho 2020) ("[A] statement is defamatory per se when it (1) imputes that someone committed a felony, and (2) that the crime imputed was a felony or a crime of moral turpitude."). To falsely publish that someone is a pedophile and engages in child trafficking is undoubtedly defamatory *per se*. As such, the malicious element of the Idaho defamation cause of action ports over to § 523(a)(6).

Finally, as part of the Idaho Default Judgment, the Idaho court found that Defendant Bundy "communicated information concerning the Plaintiffs to others." [Dkt. 37-8, Pg. 24]. Part of the information that Defendant Bundy communicated to others was that:

"St. Luke's, St. Luke's management, law enforcement, DHW, the courts, and the medical practitioners are all involved in a conspiracy to engage in criminal child trafficking, kidnapping children and stealing children to make money . . . [and] [t]he medical providers are pedophiles who want to abuse children and engage in child trafficking."

[Dkt. 37-8, Pg. 20].

As the Idaho court explained, these statements "were completely unfounded, false, made intentionally, and maliciously harmed the reputations of the Plaintiffs." [*Id.* at 21].

The Court concludes that, as to the defamation claim from the Idaho Default Judgment, the elements of willfulness and maliciousness entailed within the cause of action both port over to the § 523(a)(6) understanding of a "willful and malicious" injury. This cause of action's elements therefore constitute an "issue decided in the prior litigation [that] was identical to the issue presented in the present action." *Ticor Title Co.*, 157 P.3d at 618.

> **b.** Plaintiffs' invasion of privacy claim does not overlap with the elements of § 523(a)(6).

Idaho law recognizes four kinds of invasions of privacy: "1.) [i]ntrusion upon the plaintiff's seclusion or solitude, or into his private affairs[;] 2.) [p]ublic disclosure of embarrassing private facts about the plaintiff[;] 3.) [p]ublicity which places the plaintiff in a false light in the public eye[;] and 4.) [a]ppropriation, for the defendant's advantage, of the plaintiff's name and likeness." *Hoskins v. Howard*, 971 P.2d 1135, 1140 (Idaho 1998). In its Findings and Conclusions, the Idaho Court limited its evaluation of invasion of privacy to the false light tort. [Dkt. 37-8, Pgs. 24–25] ("As to the Invasion of Privacy claims, the Court finds: The Defendants placed Mr. Roth, Dr. Erickson, and NP Jungman in a false light in the public eye by publicly disclosing some falsity or fiction concerning [them].").

The Idaho tort of false light requires "(1) [a] disclosure to the public by the defendant; (2) the disclosure is a falsehood concerning the plaintiff; and (3) the disclosure was the proximate cause of damages." *Berian v. Berberian*, 483 P.3d 937, 950 (Idaho 2020). Idaho law also indicates that the falsehood must be materially false. *See Steele v. Spokesman-Review*, 61 P.3d 606, 610 (Idaho 2002) (quoting *Hoskins*, 971 P.2d at 1140) ("Where the publication is free from material falsehood, recovery under this cause of action may not be had.").

The elements of false light under Idaho law do not entail a finding of maliciousness. It is possible for someone to be found liable for false light under Idaho law for having disseminated a non-malicious falsehood. For example, the tort of false light may lie when the false depiction is laudatory of the subject. *See, e.g., Time, Inc. v. Hill*, 385 U.S. 374, 384 n.9 (1967) ("[T]he published matter need not be defamatory, on its face or otherwise, and might even be laudatory and still warrant recovery [in an invasion of privacy action]."); Russell G. Donaldson, Annotation, *False Light Invasion of Privacy—Neutral or Laudatory Depiction of Subject*, 59 A.L.R. 4th 502 (orig. pub. 1988, updated 2025) (collecting cases). This is to say that under the elements of Idaho false light, there does not need to be a finding of maliciousness to prove liability.

For this reason, the Court concludes that the Idaho false light/invasion of privacy cause of action does not port over to § 523(a)(6)'s willful and malicious standard.

    c.  <u>Plaintiffs' intentional infliction of emotional distress claim does not overlap with the elements of § 523(a)(6).</u>

"Under Idaho tort law, four elements are necessary to establish a claim of intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *See Hopper v.*

*Swinnerton*, 317 P.3d 698, 707 (Idaho 2013) (quoting *Edmondson v. Shearer Lumber Prods.*, 75

P.3d 733, 740 (Idaho 2003)).

The Court has reviewed the findings and conclusions of the Idaho Default Judgment

regarding Plaintiffs' intentional infliction of emotional distress claim. In its Findings and

Conclusions, the Idaho Court wrote,

> As to the Intentional Infliction of Emotional Distress claims, the Court finds: a. Defendants engaged in **intentional or reckless conduct**; b. That was extreme and outrageous; c. Causing severe emotional distress to Mr. Roth, Dr. Erickson, and NP Jungman; and d. Plaintiffs Mr. Roth, Dr. Erickson[,] and NP Jungman were injured and the emotional distress was proximately caused by Defendants' conduct.
>
> [Dkt. 37-8, Pg. 25] (emphasis added).

The Idaho Court specifically found and concluded that the defendants in the Idaho Lawsuit

engaged in "intentional or reckless conduct." This finding fails to sufficiently establish that Mr.

Bundy acted in a "willful" manner. *See Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998) ("We hold

that debts arising from recklessly or negligently inflicted injuries do not fall within the compass

of § 523(a)(6)."). Idaho law allows for liability under the intentional infliction of emotional distress

tort upon a finding of recklessness. For example, in *Gill v. Brown*, the Idaho Court of Appeals

allowed a claim of intentional infliction of emotional distress to proceed to a trial on the merits

when the plaintiffs had alleged that the defendant "negligently and recklessly" shot and killed their

pet donkey. 695 P.2d 1276, 1278 (Idaho Ct. App. 1985). The *Gill v. Brown* court explained that

"[b]y alleging that Brown's conduct was reckless and that they thereby suffered extreme mental

anguish and trauma, the Gills have alleged facts that, if proven, could permit recovery under an

intentional infliction of emotional distress cause of action." *Id.*

The possibility of liability for intentional infliction of emotional distress under a

"recklessness" intent standard makes this cause of action incompatible with the demands of §

523(a)(6). As such, the Idaho Court's finding and conclusion that Mr. Bundy intentionally or recklessly inflicted emotional distress upon Plaintiffs is ineligible for recognition under 11 U.S.C. § 523(a)(6).

3. *Whether the willful and malicious elements within the Idaho Default Judgment were actually decided in the Idaho Lawsuit.*

"Idaho law recognizes a default judgment as 'actually litigated' and 'on the merits.'" *Idaho Dept. Labor v. Tileh (In re Tileh)*, 665 B.R. 447, 456 (Bankr. D. Idaho 2024). *See also Waller v. State, Dep't of Health & Welfare*, 192 P.3d 1058, 1062–63 (Idaho 2008) ("Waller could have (and manifestly should have) presented this defense in the prior lawsuit . . . . [W]e affirm the district court's determination that the default judgment precluded Waller from relitigating the issue of paternity."). By failing to respond to the Fourth Amended Complaint in the Idaho Lawsuit, Mr. Bundy admitted each allegation contained therein. *See Fed. R. Civ. P.* 8(b)(6) ("An allegation— other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); Fed. R. Bankr. P. 7008. When the Idaho Court entered its Findings and Conclusions and the subsequent Idaho Default Judgment, that constituted an actual adjudication on the merits of the Idaho Lawsuit.

4. *Whether the Idaho Default Judgment constituted a final judgment on the merits.*

Idaho law allows default judgments to constitute final judgments on the merits. *See Waller*, 192 P.3d at 1062 ("[A]bsent fraud or collusion, the principal of res judicata applies equally in cases of default judgment."). *See also Goodwin v. Beckley (In re Beckley)*, No. 12-06021, 2013 WL 865541, at *6 (Bankr. D. Idaho March 7, 2013) ("Default [j]udgments [a]re [e]ntitled to [p]reclusive [e]ffect[.]"); *In re Tileh*, 665 B.R. at 456 ("[U]nder Idaho law, the [d]etermination was litigated and constitutes a final judgment on the merits."). "The fact that Defendant did not actively

27

oppose Plaintiff[s'] [litigation] . . . in state court is of no moment." *Cheirett v. Biggs (In re Biggs)*, 563 B.R. 319, 326 (Bankr. D. Idaho 2017). The Idaho Default Judgment was a validly entered final judgment. This constitutes a final adjudication on the merits.

Further, the Idaho Supreme Court has noted that "factors supporting the conclusion that [a] decision was final for purposes of issue preclusion . . . [include] whether the court supported its decision with a reasoned opinion, and whether the decision was subject to appeal." *Rodriguez v. Dep't of Corr.*, 29 P.3d 401, 405 (Idaho 2001). The Idaho Court clearly supported its decision with a reasoned analysis of Mr. Bundy's willfulness and maliciousness. [*See generally* Dkt. 37-8]. Further, in the Idaho Lawsuit, Mr. Bundy's co-defendant, Diego Rodriguez, has appealed the Idaho Default Judgment. [*See* Dkt. 37-9]. Mr. Bundy has neither appealed nor sought reconsideration by the trial court. As such, the Idaho Court entered a judgment on the merits of Mr. Bundy's willfulness and maliciousness, which appears to be final in all respects.

5.  *Whether Plaintiffs have privity with Mr. Bundy.*

Mr. Bundy was a defendant in the Idaho Lawsuit. The St. Luke's Creditors were plaintiffs in the Idaho Lawsuit. The Idaho Default Judgment was entered jointly and severally against Mr. Bundy in favor of the St. Luke's Creditors. Therefore, "[t]he parties in state court are the same as those in this action." *In re Biggs*, 563 B.R. at 327. *See also Rodriguez*, 29 P.3d at 404 ("There is no question but that Rodriguez is the same party in both lawsuits.").

6.  *Conclusion on Plaintiffs' issue preclusion argument.*

Plaintiffs have established that the defamation claim from the Idaho Lawsuit is entitled to preclusive effect. The Idaho Default Judgment fully established that Mr. Bundy injured Plaintiffs

in a willful and malicious manner through his defamation of them. However, all other claims asserted in the Idaho Lawsuit do not meet the standard for recognition under 11 U.S.C. § 523(a)(6).

C. The Court will not determine whether Mr. Bundy's Answer fails to deny the claims asserted against him.

In light of the Court's determination that Mr. Bundy is precluded from re-litigating the issues of whether he acted in a willful and malicious way under 11 U.S.C. § 523(a)(6), the Court finds it unnecessary to consider Plaintiffs' second argument regarding Mr. Bundy's Answer. "If it is not necessary to decide more to dispose of a case, then it is necessary not to decide more." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 375 (2010) (Roberts, C.J., concurring) (citation omitted) (quotations omitted). The Court will not address this argument.

D. The Full Faith and Credit Clause of the United States Constitution prohibits reconsideration of the Idaho Court's Damages Award.

That the Idaho Default Judgment is entitled to preclusive effect regarding the willful and malicious standard under § 523(a)(6) does not end the Court's analysis. A brief discussion about damages is needed.

The Idaho Default Judgment contained several damages awards against several defendants, including Mr. Bundy. Except for the attorneys' fees and costs ordered, every other damages award was issued "jointly and severally" upon each defendant to the Idaho Lawsuit. [Dkt. 37-1, Pgs. 4–5]. Under the Full Faith and Credit Clause of the United States Constitution and the *Rooker-Feldman* doctrine, *see supra* Section IV(A), this Court may not "modify or set aside" the state-court damages ordered against Mr. Bundy. *Mayotte v. U.S. Bank N.A. et al.*, 880 F.3d 1169, 1174 (10th Cir. 2018).

Because the Idaho Court did not specifically identify the amount of damages ordered for each cause of action, this Court must consider the damages awarded, apart from the attorneys' fees and costs, as a lump sum. To that end, insofar as the damages for one cause of action are indistinguishable from another, this Court must apply the entire Idaho Default Judgment. To do otherwise would constitute an impermissible re-opening of the Idaho Default Judgment.

Regarding the attorneys' fees and costs awarded in the Idaho Default Judgment, clearly Mr. Bundy was not ordered to pay the fees and costs attributable to the other defendants. As such, those fees and costs are inapplicable to the present case.

The question before this Court is simply whether Plaintiffs are entitled to a judgment on their Motion for Summary Judgment that the Idaho Default Judgment is non-dischargeable. The answer is simple—yes.

## V.    **CONCLUSION**

For the reasons explained above, the Court concludes that the Idaho Court fully adjudicated that Mr. Bundy acted in a willful and malicious manner in defaming the St. Luke's Creditors. The Idaho Court's determinations are entitled to preclusive effect under Idaho's law of issue preclusion and the Full Faith and Credit Clause of the United States Constitution. These determinations are therefore binding on this Court. As such, the Court grants summary judgment in favor of Plaintiffs on their 11 U.S.C. § 523(a)(6) claim.

The Court directs counsel for Plaintiffs to prepare a proposed judgment rendering the Idaho Default Judgment nondischargeable under 11 U.S.C. § 523(a)(6). This proposed judgment should specifically calculate the damages Mr. Bundy owes under the Idaho Default Judgment, as adjusted for the interest rate set forth in the Idaho Default Judgment (10.250% per annum), less the

attorneys' fees and costs ordered upon Ammon Bundy for Governor, Diego Rodriguez, Freedom Man Press, Freedom Man PAC, and People's Rights Network. [Dkt. 37-1, Pgs. 4–5]. Upon counsel for Plaintiffs submitting their proposed judgment, counsel for Plaintiffs should set a hearing for the approval of the calculations of the judgment and to allow the parties to comment on the final amount.

In this present situation, the Court's hands are tied. The law is clear, and to hold otherwise would violate fundamental constitutional principles and well-settled law.

**—END OF DECISION—**

**Designation of Parties to be Served**

Electronic Mail Notice List:

- Jennifer M Jensen     jmjensen@hollandhart.com

- Benjamin David Passey     bdpassey@hollandhart.com, phowell@hollandhart.com

- Darren G. Reid     dgreid@hollandhart.com, cfries@hollandhart.com

- Erik F. Stidham     efstidham@hollandhart.com, dljenkins@hollandhart.com, boiseintaketeam@hollandhart.com

- Engels Tejeda     ejtejeda@hollandhart.com, slclitdocket@hollandhart.com, intaketeam@hollandhart.com, jjbutton@hollandhart.com

Manual Notice List:

- Ammon Edward Bundy
  P.O. Box 1062
  Cedar City, UT 84721

- Ammon Edward Bundy
  896 E 400 S
  New Harmony, UT 84757